EDWIN D. TUCKER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa November 11, 1887.*

1. MARRIAGE LICENSE—*as to the capacity in which the clerk may sign it.* As the county clerk is also the clerk of the county court, the fact that the county clerk signs the marriage license as clerk of the county court, will not affect its validity.

2. CRIMINAL LAW—*bigamy—proof of a former marriage, of the mode.* On a prosecution for bigamy, letters of the defendant written to his former wife while they were living together as husband and wife, showing that they were living together as such, and that she was acknowledged by him as his wife, are admissible in evidence to show the fact of the prior marriage.

3. The statute relating to bigamy provides that it shall not be necessary to prove either marriage by the register or certificate thereof, or other record evidence, but the same may be proved by such other evidence as is admissible to prove a marriage in other cases. So it is competent to show the

conversation and letters of the parties addressing each other as husband and wife, and the marriage may be shown by a certified copy from the records of the county clerk of the certificate of the person who performed the marriage ceremony, indorsed on the license.

4. SAME—*record evidence in criminal cases—right of accused to meet the witnesses face to face.* The constitutional provision that "in all criminal prosecutions the accused shall have the right to meet the witnesses face to face," has no reference to record evidence which may, during the progress of a criminal trial, become necessary to establish some material fact to secure a conviction. A record imports verity, and a cross-examination is foreign to and has no application to record evidence.

5. VARIANCE—*middle initial in a name.* An indictment for bigamy charged that the defendant was lawfully married to Mary I. Bennett, while the proof showed a marriage to Mary Bennett: *Held,* no variance, as the letter "I" was no part of the name of the person named in the indictment.

6. PRACTICE—*allowing further evidence after argument has commenced.* The admission of further evidence on the part of the prosecution in a criminal case, after the case is closed and before the jury retires, is a matter resting in the sound discretion of the court; and when that discretion is not abused, the admission of such evidence can not be assigned for error.

7. On a trial for bigamy, after the evidence was closed and the State's attorney had opened the argument to the jury, and defendant's counsel had addressed the jury, the court took a recess. On the re-convening of the court, on motion of the State's attorney, the court allowed him to read in evidence certain portions of the statute of another State, and offered to allow the defendant the privilege of introducing further evidence, and to further argue the case to the jury: *Held,* no error.

8. SAME—*time to object—certificate to transcript on change of venue.* Where a change of venue is granted in a criminal case on the application of the defendant, if the authentication of the record by the clerk of the court from which the change is taken, is defective or informal, the objection thereto should be made by him to the court before the trial, or it will be considered as waived.

9. JURISDICTION *on constructive service—time of publication—in a Utah divorce case.* The record of a decree of divorce in the probate court of Utah Territory showed service on the defendant by publication, the first insertion of which in the paper was only thirty-five days before the date of the decree, while the law of that territory given in evidence required that forty days should intervene: *Held,* that the decree was void for want of jurisdiction.

10. AMENDMENT OF RECORD *after the term—want of notice.* Three years after a decree of divorce in a Utah court, the record was amended so as to show jurisdiction of the defendant by due publication, which amendment was made without notice to the defendant in the suit: *Held,* that the amend-

ment was a nullity, and could not be shown to cure a defect in the record or decree of divorce.

11. FORMER ADJUDICATION—*as to sufficiency of indictment.* Where this court holds an indictment sufficient, but reverses a conviction under the same and remands the cause, the judgment of this court will be conclusive as to the sufficiency of the indictment, on a second writ of error.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. N. J. PILLSBURY, Judge, presiding.

Mr. RUFUS KING, for the plaintiff in error:

On writ of error to sustain his judgment, the party must show a good record. *Sweeney* v. *People,* 28 Ill. 210.

The authentication of the record by the clerk of the Kankakee circuit court is defective, in failing to show a full transcript of the record and proceedings. The clerk can not certify to what transpired in his court. He can only make a true transcript of the record. Rev. Stat. chap. 146, sec. 28; 1 Greenleaf on Evidence, sec. 498; *Marshall* v. *Adams,* 11 Ill. 38; *Cross* v. *Mill Co.* 17 id. 54; *City of Beardstown* v. *City of Virginia,* 81 id. 541.

The clerk can only certify to what he finds upon the files and records remaining in his office. *Augustine* v. *Doud,* 1 Bradw. 591; *Oaks* v. *Hill,* 14 Pick. 442; *Robbins* v. *Townsend,* 20 id. 345; *Wayland* v. *Ware,* 109 Mass. 248; Wharton on Crim. Ev. sec. 195.

It will be claimed that section 35, chapter 146, of the Revised Statutes, covers all defects. By that, only irregularities are waived, not essential to the jurisdiction. *Yates* v. *People,* 38 Ill. 533; *Rainey* v. *People,* 3 Gilm. 71; *Noecker* v. *People,* 91 Ill. 494; *Wight* v. *Kirkpatrick,* 4 Scam. 339; *Perteet* v. *People,* 70 Ill. 186.

The court erred in admitting the record of the marriage license and the certificate made and issued by the clerk of the county court, when the statute·requires it to be done by the county clerk. Rev. Stat. chap. 89, secs. 7, 12; chap. 46,

sec. 16; chap. 35, secs. 3, 4, 5; chap. 25, sec. 2; chap. 34, sec. 63; chap. 147, secs. 10, 11; *Satterfield* v. *People*, 104 Ill. 448; *McCotta* v. *Harker*, 8 N. Y. 504.

As to variance in the name of the alleged former wife, see 1 Bishop on Marriage and Divorce, sec. 481; Wharton's Crim. Pl. and Pr. sec. 116; Wharton on Crim. Ev. secs. 94, 100; *Regina* v. *Gooding*, 1 C. & M. 297; *Price* v. *State*, 19 Ohio, 423; *State* v. *Hughes*, 1 Swan. 261; *Commonwealth* v. *Perkins*, 1 Pick. 389; *Commonwealth* v. *Hall*, 40 Me. 438; *Rex* v. *Duley*, 4 C. & P. 579; *State* v. *Horner*, 3 Pick. 362; *Davis* v. *People*, 19 Ill. 77.

The record evidence is in contravention of article 2, section 9, of the constitution, giving the accused the right to meet the witnesses face to face. Cooley on Const. 318; *People* v. *Lambert*, 5 Mich. 349; *State* v. *Thomas,* 64 N. C. 74; *Weyrich* v. *People*, 89 Ill. 90; *Goodwin* v. *State*, Meigs, 195.

On indictment for bigamy, a marriage in fact must be shown in both cases, and reputation, conduct, cohabitation and mere confession of the accused can not accomplish this. Confessions are only authoritative when there is clear proof of the *corpus delicti*, which, in bigamy, is the alleged first marriage. Wharton on Crim. Law, (8th ed.) sec. 1696.

It is settled that an admission, whether under oath or on examination, or otherwise, is not admissible to prove record facts. Wharton on Crim. Ev. secs. 153, 687; 2 Greenleaf on Evidence, (13th ed.) secs. 49, 461, 462; *People* v. *Humphrey*, 7 Johns. 314; *State* v. *Roswell*, 6 Conn. 446; *Miner* v. *People*, 58 Ill. 59; *South* v. *People*, 98 id. 261; *Miller* v. *White*, 80 id. 580.

The court improperly opened the case after the argument had begun. *Railroad Co.* v. *Jameson*, 48 Ill. 281; *White* v. *People*, 90 id. 117; *Tripp* v. *Cook*, 26 Wend. 143; *Railroad Co.* v. *Maroney*, 95 Ill. 179; *Mary* v. *State*, 5 Mo. 80; Lewin's Crown Cases, 151.

Mr. GEORGE HUNT, Attorney General, for the People:

The certificate of the clerk of the circuit court of Kankakee county, that this is a copy, is in effect and substance that it is a transcript of the record. But this objection now comes too late. Rev. Stat. chap. 146, sec. 35; *Perteet* v. *People,* 70 Ill. 171; *Gardner* v. *People,* 3 Scam. 87; *McBain* v. *Enloe,* 13 Ill. 76; *Hitt* v. *Allen,* id. 592; *Yates* v. *People,* 38 id. 533; *People* v. *Zane,* 105 id. 667; *Logston* v. *State,* 3 Heisk. 414; *Goodhue* v. *People,* 94 Ill. 37.

Cohabitation with Mary E. Markham in this State completes the offence, although the marriage with her was in another State. *Hutchins* v. *Kimmel,* 31 Mich. 128; *Fleming* v. *People,* 27 N. Y. 329; Wharton on Conflict of Laws, secs. 170-173.

While the record evidence might, of itself, prove the marriage, the prosecution might properly produce other evidence of the fact. *Hayes* v. *People,* 25 N. Y. 396; *Hutchins* v. *Kimmel,* 31 Mich. 128.

The words, "county clerk," shall be held to include "clerk of the county court," and *vice versa.* Rev. Stat. chap. 131, sec. 1, clause 8.

Record evidence of the marriage was competent. *King* v. *Dale,* 1 Scam. 513; *Miller* v. *White,* 80 Ill. 580; *Conant* v. *Griffin,* 48 id. 410; *Jackson* v. *People,* 2 Scam. 231.

This court has already held that the indictment is sufficient. *Tucker* v. *People,* 117 Ill. 88.

The Utah court had no jurisdiction to render the alleged decree of divorce, and such decree was wholly void.

Mr. H. L. RICHARDSON, State's attorney, also for the People:

The record of the divorce in Utah is void for fraud and want of jurisdiction. The jurisdiction may always be inquired into. *Rose* v. *Hinly,* 4 Cranch, 241; *Elliott* v. *Piersoll,* 1 Pet. 628; *Harvey* v. *Tyler,* 2 Wall. 340; *Voorhees* v. *Bank,* 10 id. 437; *Hickey* v. *Stewart,* 3 How. 750.

The doctrine that to give jurisdiction in a divorce suit the plaintiff must be a resident of the State or territory where the divorce is obtained, is universal. *Harrison* v. *Harrison,* 19 Ala. 499; *House* v. *House,* 25 Ga. 423; *Williamson* v. *Parisien,* 1 Johns. Ch. 389; *Hinds* v. *Hinds,* 1 Iowa, 36; *Kruse* v. *Kruse,* 25 Mo. 68; *Fellows* v. *Fellows,* 8 N. H. 160; *Winship* v. *Winship,* N. J. Eq. 107; *Dorsey* v. *Dorsey,* 7 Watts, 349; *Ditson* v. *Ditson,* 4 R. I. 87; *Fickle* v. *Fickle,* 5 Yerg. 203.

On the general doctrine of divorces fraudulently obtained in other States, see *Hanover* v. *Turner,* 14 Mass. 227; Am. Dec. 203, and note 206. Also, *Burlein* v. *Shannon,* 115 Mass. 447; *Doughty* v. *Doughty,* 27 N. J. Eq. 315; *Maguire* v. *Maguire,* 7 Dana, 181.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The plaintiff in error, Edward D. Tucker, was indicted, at the April term, A. D. 1885, of the circuit court of Kankakee county, for bigamy, by the grand jury of that county. He was arrested, tried and convicted, but the judgment was subsequently reversed in this court on writ of error, and the cause was remanded for a new trial. After the cause was remanded, the defendant obtained a change of venue from Kankakee to Livingston county. A transcript of the record and the papers in the case were transmitted to the circuit court of Livingston county, where a second trial was had, and the defendant was again found guilty. To reverse the latter judgment the defendant sued out this writ of error.

The first error relied upon is, that the circuit court of Livingston county had no jurisdiction of the cause; and this supposed error is predicated upon what is supposed to be a defective transcript transmitted from the circuit court of Kankakee county to the circuit court of Livingston county. The defect relied upon is, that the clerk has certified to what transpired in court, rather than to a true transcript of the record. The certificate is as follows:

"I, J. Frank Leonard, clerk of the circuit court in and for the said county, in the State aforesaid, do hereby certify that the foregoing is a true copy of the petition and affidavits; the organization of the grand jury; the return of the indictment against said defendant into open court; the plea of the defendant; the order for change of venue herein; and that the papers numbered from one (1) to five (5), both inclusive, are all the papers now on file in my office, forming any part of the record in this case. I further certify that I am the custodian of the records and files of said court. In witness whereof," etc.

Section 28, chapter 146, of the Revised Statutes, relating to change of venue, provides: "In all cases of change of venue, the clerk of the court from which the change is granted shall immediately make a full transcript of the record and proceedings in the case, and of the petition and affidavits, and order for the change of venue, and transmit the same, together with all papers filed in the case, including the indictment and recognizances of the defendant and all witnesses, to the proper court."

It is true that the certificate does not, in terms, state that the foregoing is a true copy of the record and proceedings, as required by the statute, and yet such is the substance of, and what was intended by, the certificate. But as we understand the law which must control the question, it will not be necessary to determine whether the certificate is technically accurate or not. The venue in this case was changed at the request and upon the application of the defendant. The record and papers upon which the defendant was tried were transmitted to Livingston county, upon his request. If the certificate of the clerk was irregular or defective, or if the record was otherwise defective, it was the duty of the defendant, before the trial began, to point out the defects, in order that such defects might be cured; but no objection was made by the defendant to the record, or any part thereof, as certified by the clerk of the circuit court of Kankakee county. Under such circum-

stances, can he now be heard to complain that the circuit court of Livingston county had no right to proceed with the trial of the cause? We think section 35 of chapter 146, *supra*, furnishes the answer. That section is as follows: "All questions concerning the regularity of proceedings in obtaining changes of venue, and the right of the court to which the change is made to try the cause and execute the judgment, shall be considered as waived after trial and verdict."

In *Gardner* v. *The People*, 3 Scam. 83, where a change of venue had been taken from the circuit court of Scott to the circuit court of Morgan county, after a conviction, on writ of error it was objected, as here, that the circuit court of Morgan county had no right to try the prisoner, because the record of the proceedings in Scott county was not properly certified by the clerk, as required by the statute. In deciding the point raised, it is there said: "No objection was made in the court below, before or after verdict, to the regularity of the proceedings in Scott county, or to the authentication of the same when changed to Morgan county. If the authentication of the record was defective, the prisoner should have availed himself of it in the circuit court before trial. Not having done so, the irregularity, if in fact any existed, is cured by the statute (citing it,) as above." The same rule was laid down in *Perteet* v. *The People*, 70 Ill. 172, and the doctrine has been approved in other cases, but it will not be necessary to cite them. If the transcript from Kankakee county, or the certificate thereto, was defective or irregular, it was the duty of the defendant to interpose the objection before the trial. As he failed to speak when duly required, the objection now made for the first time comes too late.

The fourth count of the indictment charges that Edward D. Tucker, on the 15th day of April, 1872, in the county of Cook, Illinois, married Mary I. Bennett, and afterwards, while so married to said Mary, to-wit, on the 19th day of September, 1883, at, to-wit, the county of Kankakee, feloniously and un-

lawfully did marry Mary E. Markham, *alias* Mary E. Rommel, (said Mary, his former wife, being then alive,) contrary to the form of the statute, etc. For the purpose of proving the marriage between the defendant and Mary I. Bennett, a certified copy of a license, and return thereon, were read in evidence. The license was signed by George W. Wheeler, clerk of the county court, and it is insisted that such license was invalid, because the statute only authorized the county clerk to issue a license. Under our statute, the county clerk is clerk of the county court,—one and the same person is county clerk and clerk of the county court; and the fact that George W. Wheeler, who was county clerk and clerk of the county court, signed the license as clerk of the county court, did not affect its validity. This question is fully met by section 1, chapter 131, of the Revised Statutes of 1874, which declares that the words "county clerk" shall be held to include "clerk of the county court," and the words, "clerk of the county court," to include "county clerk."

It is also said that there was a variance between the charge in the indictment and the proof. The averment in the indictment is, that defendant was lawfully married to Mary I. Bennett, while the proof showed a marriage to Mary Bennett. We do not regard the alleged variance of any importance. The letter "I" was no part of the name of the person mentioned in the indictment, and the evidence of a marriage to Mary Bennett was sufficient proof of the fact as laid in the indictment.

Complaint is also made that the court permitted certain letters of the defendant, written to his former wife, Mary Bennett, to be read in evidence. These letters were written while the defendant and Mary Bennett were living together as husband and wife. They were addressed to her as his wife, and contained admissions that she was his wife. They also show that the parties were living together as husband and wife, and that she was acknowledged and treated by him as his wife. In a prosecution for bigamy, section 29, chapter 38, of the

Revised Statutes of 1874, provides: "It shall not be necessary to prove either of the marriages by the register or certificate thereof, or other record evidence; but the same may be proved by such evidence as is admissible to prove a marriage in other cases." In civil cases, Greenleaf, (vol. 2, sec. 462,) says: "Marriage may be proved by reputation, declarations and conduct of the parties, and other circumstances usually accompanying that relation. * * * In regard to the language and conduct of the parties, it is competent to show their conversation and letters addressing each other as man and wife." Under the rule indicated, there can be no doubt in regard to the competency of the evidence. Whether the marriage, in a prosecution of this character, might be established solely by such evidence, it will not be necessary, here, to determine. The evidence tended to prove the marriage, and, as such, it was competent, in connection with the other evidence bearing upon the question.

It is also urged, that under the constitutional guaranty of the statute, the defendant had the right to meet the witnesses face to face, and that the record proof of marriage, consisting of a certified copy, from the records of the county clerk, of the certificate of the person who performed the marriage ceremony indorsed on the back of the license, was and is a violation of that right. In other words, the argument is, that record evidence of marriage is not admissible, but the law required the prosecution to produce the person who solemnized the marriage, as a witness, in order that the defendant might meet him face to face, and exercise the right of cross-examination.

Section 9, of chapter 89, of the Revised Statutes of 1874, provides that the minister, judge or justice of the peace shall, within thirty days after a marriage is solemnized, make a certificate thereof, and return the same, together with the license, to the clerk of the county in which the marriage occurred. Section 11 provides that the county clerk, upon receiving such certificate, shall make a registry thereof in a book to be kept

in his office for that purpose. He shall also indorse on such certificate the time when the same is registered, and shall number and carefully preserve the same. Section 12 declares that such certificate, or a copy of the same, or of the entry of such registry, certified by the county clerk under the seal of the county, shall be received as evidence of the marriage of the parties as therein stated.

In *Jackson* v. *The People*, 2 Scam. 231, which was a prosecution for bigamy, the record evidence of marriage was held admissible. In that case, however, the constitutional question does not seem to have been raised, but if it had been raised and relied upon, we do not think the result would have been different. Under the constitutional guaranty the depositions of witnesses can not be taken and read in evidence in a criminal prosecution, as is done in a civil case, because this would be a direct denial of the right to meet the witnesses face to face. But the provision, "in all criminal prosecutions the accused shall have the right to meet the witnesses face to face," in our judgment has no reference to record evidence which may, during the progress of a criminal trial, become necessary to establish some material fact, to secure a conviction. The offered transcript consisted of a public record, which is declared by the law to be evidence. The record imports verity, and a cross-examination is foreign to and has no application to this character of evidence.

After the evidence had been closed by both People and defendant, the attorney for the People made an argument to the jury, and he was followed by an argument in favor of the defendant. At the conclusion of the argument in behalf of defendant the court took a recess for dinner. When the court met after recess, the counsel for the People entered a motion for leave to introduce in evidence certain portions of the statute of Minnesota. This motion was allowed, and the statute was read in evidence, and the ruling of the court is relied upon as error. It appears from the bill of exceptions, that the court,

upon allowing the evidence to be introduced, offered to allow
the defendant the right to introduce further evidence in his
behalf, if he desired, and to further argue his case to the jury.
The admission of further evidence after the case had been
closed, and before the jury had retired, was a matter resting
in the sound discretion of the court, and as it does not appear
that the discretion was abused, we do not think the court erred.
The failure on the part of the attorney for the People to read
in evidence the statute of Minnesota, was a mere oversight,
and it was but just that he should be allowed to introduce the
evidence, as the defendant was in no manner injured, the court
having allowed him the right to rebut the evidence if he wished,
and to argue its force and effect to the jury.

As a defence to the indictment, the defendant introduced in
evidence the statutes of the territory of Utah, showing authority
in the probate courts to grant divorces. Also, exemplification
of record of proceedings in the probate court of the county of
Salt Lake, wherein plaintiff in error was complainant, and
Mary I. Bennett, defendant, and a decree of divorce granted the
complainant therein on May 23, 1883. The service, as appears
from the record in the divorce proceeding, was had by publi-
cation in a newspaper. The statute read in evidence required
the notice to be published four times consecutively in a news-
paper having a general circulation in the territory, the first
insertion to be at least forty days before the commencement
of the term of court. The notice was published for one month
in a weekly newspaper, first insertion of date April 18, 1883,
last, May 9, 1883. The decree was rendered on the 23d day
of May, but thirty-five days from the date of the first publica-
tion. From the facts appearing on the face of the record, it
is manifest that the court in Utah, where the decree was ren-
dered, had no jurisdiction of the person of the defendant in
the divorce proceeding, and having no jurisdiction, the decree
was void.

Syllabus.

The defendant attempted to introduce an amendment of the record, made nearly three years after the divorce was granted, to cure the defect appearing in the record; but this amendment was made without notice to the defendant in the proceeding, and was, as the circuit court properly held, a nullity. What authority the court in Utah had to amend the record in a matter of substance almost three years after a final decree was rendered, does not appear, but if it had such authority, it could only be exercised on full notice to the party interested.

Objection is made to the indictment, but when the case was here before, the indictment was held to be sufficient, and that decision must be held to be conclusive as to its sufficiency.

Some of the instructions given for the People have been criticised, and the decision of the court in modifying some of the defendant's instructions, is objected to; but upon an examination of all the instructions, we find no substantial error. Indeed, we find no error in the record which will authorize a reversal of the judgment.

The judgment will be affirmed.

*Judgment affirmed.*