(No. 41878.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* MORRIS FIDDLER, Appellant.

*Opinion filed March 24, 1970.—Rehearing denied May 26, 1970.*

WARD, J., took no part.

HARRY J. BUSCH and JACOB SHAMBERG, both of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and PATRICK T. DRISCOLL, JR., Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the circuit court of Cook County found the defendant, Morris Fiddler, guilty of the murder of Jayne Levin and he was sentenced to a term of 20 to 30 years in the penitentiary. The Appellate Court, First District, affirmed (102 Ill. App. 2d 319), and we granted leave to appeal.

The facts are fully stated in the appellate court opinion and we restate them here only as they pertain to the single issue before us. At the trial the only direct evidence offered by the prosecution as to the cause of death was a certified copy of the coroner's certificate of death issued by the county clerk. The entire certified copy was received in evidence and is in the record, but the jury was permitted only to hear the following statement derived from it: "In the medical opinion of the Coroner's office, * * * as recorded in the Coroner's office, the cause of death was ligature strangulation." The dispute in this court centers upon the admissibility of this statement.

To support admissibility the State relies upon section 25 of the Vital Statistics Act. (Ill. Rev. Stat. 1967, ch. 111½, par. 73—25.) The pertinent provisions of that section are:

"(2) The certification of birth shall contain only the name, sex, date of birth, and place of birth, of the person to whom it relates, and file number; and none of the

other data on the cerificate of birth except as authorized under subsection (5) of this section.

"(3) The certification of death shall contain only the name, sex, date of death, and place of death of the person to whom it relates, and file number; and none of the other data on the certificate of death except as authorized under subsection (5) of this Section.

"(4) A certified copy of a certificate shall be issued:

(a) Upon the order of a court of record; or

(b) In case of a birth certificate, upon the specific written request by the person, if of legal age, or by a parent or other legal representative of the person to whom the record of birth relates; or

(c) Upon the specific written request by a department of the state or a municipal corporation or the federal government; or

(d) In case of a death or fetal death certificate, upon specific written request of a person, or his duly authorized agent, having a personal or property right interest in the record.

"(5) Any certification or certified copy issued pursuant to this Section shall show the date of registration; and copies issued from records marked 'delayed,' 'amended,' or 'court order' shall be similarly marked and show the effective date.

"(6) Any certification or certified copy of a certificate issued in accordance with this Section shall be considered as prima facie evidence of the facts therein stated, * * *."

The certified copy of the death certificate in this case was obtained by an assistant State's Attorney. It was apparently issued pursuant to paragraph (c) of subsection (4). In the trial court the prosecution contended that the document was admissible under subsection (6) which makes any "certification of death" or "certified copy of a

death certificate" *prima facie* evidence "of the facts stated therein." The defendant argued that subsection (6) must be read in conjunction with subsection (3) which provides that a certification of death "shall contain only the name, sex, date of death and place of death of the person to whom it relates." He contended that since subsection (3) does not permit the county clerk to include a statement of the cause of death in his certification of death, it was not intended that such a statement was admissible when it was contained in his certified copy of a death certificate. The trial judge reluctantly permitted the statement of the cause of death which was derived from the certified copy to be put before the jury because he felt that the statute compelled him to do so, although he expressed his own view that "it is repugnant to our system of jurisprudence to permit this type of hearsay to come in."

The appellate court, after examining the history of the Vital Statistics Act, concluded that the legislature had drawn a distinction between a certified copy of a death certificate and a certification of death. It held that subsection (3) restricted the information that could be included in a certification of death, but that since the prosecution had introduced a certified copy of the coroner's death certificate, rather than a certification, the cause of death stated in the certificate was properly admitted as *prima facie* evidence under subsection (6) of section 25.

In this court, the argument of both parties has concentrated on whether the distinction drawn by the appellate court between a certification of death and a certified copy of a death certificate is a valid one. We need not decide that question, however, for we think that in any event the cause of death as stated in the certificate of death is not made admissible by subsection (6). That subsection gives the status of *prima facie* evidence only to "facts" stated in the certificate. The question, therefore, is whether a statement of the cause of death which is included in a coroner's cer-

tificate of death is a fact within the meaning of the statute.

While we are concerned in this case with a criminal prosecution, it is important to note that in *Spiegel's House Furnishing Co.* v. *Industrial Com.* (1919), 288 Ill. 422, this court overruled a long line of contrary decisions and held that a coroner's verdict is not admissible to prove the cause of death. The rule then announced has for 50 years been embodied in section 18 of the Coroner's Act, which provides: "Provided, further, that in any suit or proceeding hereafter commenced for the recovery of damages arising from or growing out of injuries caused by the negligence of any person, firm or corporation resulting in the death of any person or for the collection of a policy of insurance, neither the coroner's verdict returned upon the inquisition as provided herein, nor a copy thereof, shall be admissible as evidence to prove or establish any of the facts in controversy in said civil suit or proceeding." Ill. Rev. Stat. 1967, ch. 31, par. 19.

The policy that underlies section 18 of the Coroner's Act, and the restrictions of subparagraph (3) of section 25 of the Vital Statistics Act, require, in our opinion, the conclusion that the opinion of an examining physician as to the cause of death is not a "fact" which is to be admissible as *prima facie* evidence. In this case the determination of the cause of death was not made by an attending physician but only after an autopsy was performed in accordance with section 10.2 of the Coroner's Act. (Ill. Rev. Stat. 1967, ch. 31, par. 10.2.) That section requires an autopsy when the cause of death cannot be definitely established otherwise. The determination of the cause of death, therefore, may be the result of a complex value judgment which the examining doctor made upon the conclusion of the autopsy. (See *People* v. *Holder* (1964), 230 Cal. App. 2d 50, 40 Cal. Reptr. 655.) The doctor's opinion as to the cause of death is not converted into a fact by the process of including it in a certified copy of the coroner's death certificate.

In the context of a criminal case, moreover, the applicability of the constitutional right to confront witnesses must be carefully considered. The importance of that right is universally recognized. (*Dowdell* v. *United States* (1911), 221 U.S. 325, 55 L. Ed. 753, 31 S. Ct. 590; *Pointer* v. *Texas* (1965), 380 U.S. 400, 404-5, 13 L. Ed. 2d 923, 85 S. Ct. 1065.) In *Pointer* the court noted that the rule is not absolute and that exceptions have always been recognized. Nor is the right static. (*Snyder* v. *Massachusetts* (1933), 291 U.S. 97, 107, 78 L. Ed. 674, 679, 54 S. Ct. 330.) Our own decisions have recognized exceptions to the constitutional right of confrontation. (*People* v. *Dolgin* (1953), 415 Ill. 434; *People* v. *Love* (1923), 310 Ill. 558; *Sokel* v. *People* (1904), 212 Ill. 238; *Tucker* v. *People* (1887), 122 Ill. 583.) But the official statements involved in those cases were simple affirmations of the occurrence or nonoccurrence of an event.

The judgments of the appellate and circuit courts are reversed, and the cause is remanded to the circuit court of Cook County for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.