NOLA HEITZ, Adm'r of the Estate of Richard Heitz, Deceased, Plaintiff-Appellant, v. ARLIE HOGAN *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0641

Opinion filed June 27, 1985.

James Walker, Ltd., of Bloomington, for appellant.

Edward H. Rawles, of Reno, O'Byrne & Kepley, of Champaign, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

This is an appeal from a verdict and judgment in favor of all the defendants, Aimee Sawlaw, Michael Hogan, Sandra Hogan and Arlie Hogan, and against the plaintiff, Nola Heitz, administrator of the estate of Richard Heitz, deceased. The plaintiff raises several issues on appeal: (1) The statutory provision which provided for the admission of the medical report to the coroner is unconstitutional and that report should not have been admitted; (2) Dr. Bobowski's report to the coroner was inadmissible as "reconstruction testimony"; (3) the trial court erred in limiting the plaintiff's examination of Dr. Bobowski by refusing to permit leading questions; (4) the trial court erred in failing to instruct the jury with a definition of proximate cause; (5) the trial court erred in refusing to instruct the jury with respect to defendants' alleged violation of section 11—1416 of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—1416); and (6) the trial court erred in failing to instruct the jury on defendants' failure to produce a witness.

Nola Heitz, administrator of the estate of Richard Heitz, commenced a wrongful death action against Aimee Sawlaw, Michael Hogan, Sandra Hogan and Arlie Hogan. The complaint alleged that on November 10, 1981, Michael and Aimee were each operating trucks on Piatt County Highway No. 2. The two trucks were stopped adjacent to each other, with Michael in the southbound lane and Aimee in the northbound. It was further alleged that decedent, Richard Heitz, was driving in the southbound lane of Piatt County Highway No. 2

and was killed when his automobile ran into the rear of the truck operated by Michael Hogan. Michael and Aimee were employed by the partnership of Sandra and Arlie Hogan.

At the trial, Aimee testified that on November 10, 1981, she was driving a truck in the northbound lane of the Mansfield blacktop. She saw headlights approaching in the southbound lane and, through the use of her CB radio, identified the driver of the vehicle as Michael Hogan. The two stopped their trucks on the road to talk, then she continued on her way. Aimee then saw another set of headlights in the southbound lane moving toward her. She later learned that the headlights were those of an automobile driven by the decedent.

Aimee testified that when the decedent's auto passed her truck, the auto was traveling 45 to 50 miles per hour. She knew at that time that Michael's truck was either stopped in the southbound lane or, if it was moving, it was moving slowly. Aimee further testified that Michael's truck was 100 feet south of her truck when the decedent drove by her. Aimee heard the collision between the decedent's car and Michael's truck. She testified that she stopped her truck, got out, and went to a house down the road to report the accident to the Piatt County sheriff's office.

Michael Hogan testified that he had stopped his truck only a few seconds to talk with Aimee on the Mansfield blacktop. He testified that he had stopped "[t]o see if Mitchell could take the truck to the elevator and I could get back to combining." (Mitchell was apparently a passenger in Aimee's truck.) After stopping, Michael started the truck again because "Aimee and Mitch saw the car coming, so they told me and we took off."

Michael acknowledged statements he had made in an interview three days after the accident wherein he stated that it was completely dark when the accident occurred and that he was in first gear and traveling at 15 miles per hour when he was hit by the decedent's auto. He had also stated in the interview that he had stopped to talk with Aimee for two or three minutes.

State Trooper Benny O'Neill testified that he received a radio call at 5:42 p.m. on November 10, 1981, relating to the collision. He arrived at the scene at 5:55 p.m., where he saw two grain trucks and one 1976 Buick. The front end of the Buick was under the rear end of the truck in the southbound lane. O'Neill testified that Aimee Sawlaw told him she and Michael Hogan had stopped their trucks in the roadway and had been talking. O'Neill also testified that the decedent was in the driver's seat of the automobile when he arrived. However, the decedent's son, who had also arrived at the scene, removed decedent

from the automobile.

Stan Heitz, the decedent's son, lived on a farm south of Mansfield. He testified that decedent had been at the farm on the day of the accident and left at about 5:30 p.m. to return to his home near Mansfield. Stan was still in the field when a neighbor informed him his father had been in an accident. Stan and his wife, Sharon, drove to the scene of the accident. Upon arriving, Stan removed decedent from the car and Sharon and Officer O'Neill administered CPR. Stan testified that decedent had a sizeable bruise on his forehead, a cut under his nose, and cuts on the knuckles of both hands. Stan also testified that he saw Aimee Sawlaw's father, Sheriff Forrest Sawlaw, at the scene with Aimee. Stan heard Aimee say to her father, "I yelled at Mike to get out of the way, and he couldn't start."

Sharon Heitz testified that decedent was unconscious when she arrived at the scene of the accident. Sharon felt decedent's wrist and neck for a pulse but found none.

Defendants' only witness was Arlie Hogan. He testified that he had been a farmer for 12 years, that his wife's name was Sandra, and that he had three children: Michael Hogan, Matthew Hogan, and Laura Bloom.

The trial court allowed defendants to introduce into evidence the medical report of the coroner's physician. The report stated that the immediate cause of death was a cardiac arrest. The report concluded: "From the autopsy finding, it is felt that this patient had his accident due to his heart attack and no type of therapy could have changed the outcome."

In rebuttal, plaintiff called Dr. Stan Bobowski, the pathologist who prepared the medical report to the coroner. Bobowski testified that, at the time he performed the autopsy, he assumed that the speed of decedent's vehicle was 10 to 20 miles per hour. He had also stated in a deposition that the speed at impact was 10 miles per hour. This assumption was based on the physical injuries he observed to the decedent. Bobowski testified hypothetically that, in his experience, a 50 miles per hour collision without seat belts *resulted* in massive head and chest injuries, often resulted in the fracture of both knees, and occasionally resulted in the fracture of the neck. Decedent had no skull fractures and none of his facial bones were fractured.

After viewing photographs of decedent's automobile taken after the collision and being informed that decedent was traveling between 45 and 50 miles per hour immediately prior to the collision, Bobowski stated that the cardiac arrest could have been caused by the collision. He indicated, however, that it was just as probable that the heart at-

tack occurred before the collision.

The jury returned a verdict in favor of all defendants and against plaintiff. Judgment was entered on the verdict and plaintiff appeals.

■ Plaintiff first argues that the statutory provision which provided for the admission of the medical report to the coroner is unconstitutional and that the report should not have been admitted. The trial court admitted Bobowski's report to the coroner into evidence pursuant to section 115—5.1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115—5.1), which provides:

> "In any civil or criminal action the records of the coroner's medical or laboratory examiner summarizing and detailing the performance of his or her official duties in performing medical examinations upon deceased persons or autopsies, or both, and kept in the ordinary course of business of the coroner's office, duly certified by the county coroner or chief supervisory coroner's pathologist or medical examiner, shall be received as competent evidence in any court of this State, to the extent permitted by this Section. These reports, specifically including but not limited to the pathologist's protocol, autopsy reports and toxicological reports, shall be public documents and thereby may be admissible as prima facie evidence of the facts, findings, opinions, diagnoses and conditions stated therein."

Plaintiff argues that this section violates the separation of powers clause of the Illinois Constitution which provides:

> "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, sec. 1.

Plaintiff notes that, prior to the enactment of section 115—5.1, reports of and to the coroner were inadmissible in evidence under the common law. (See *People v. Fiddler* (1970), 45 Ill. 2d 181, 258 N.E.2d 359 (statement in coroner's certificate of death is inadmissible as hearsay); *Spiegel's House Furnishing Co. v. Industrial Com.* (1919), 288 Ill. 422, 123 N.E. 606 (coroner's verdict is inadmissible as evidence in civil suits for the purpose of establishing personal liability in cases where the death of the person is charged or to establish a defense in such suit); *cf.* Ill. Rev. Stat. 1983, ch. 110, par. 8—2201.) Plaintiff contends that the legislature is without power to change rules of evidence established by the courts.

A similar argument has been rejected by the supreme court in *People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 461 N.E.2d 410. In *Rolfingsmeyer,* the defendant argued that section 11—501.2(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2(c))

offended the separation of powers clause by providing that evidence of a refusal to take a breath test shall be admitted at trial. The supreme court rejected this argument, stating: "[I]t is clear that 'the legislature of a State has the power to prescribe new and alter existing rules of evidence or to prescribe methods of proof.'" (101 Ill. 2d 137, 140, 461 N.E.2d 410, 412.) The court cited section 115—5.1 of the Code of Criminal Procedure of 1963 as an example of the legislature's power to prescribe new and alter existing rules of evidence. Although section 115—5.1 had been amended since *Rolfingsmeyer* to extend its application to civil actions, that amendment would not affect the rationale of the court's opinion.

Plaintiff next argues that Public Act 82—783, which amended section 115—5.1 of the Code of Criminal Procedure of 1963 by extending its application to civil actions, violates article IV, section 8(d), of the Illinois Constitution. Article IV, section 8(d), provides: "Bills, except bills of appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." (Ill. Const. 1970, art. IV, sec. 8(d).) Plaintiff argues simply that Public Act 82—783 was not confined to one subject.

The subjects addressed by Public Act 82—783 range from agriculture and horticulture to wills and trusts. It is entitled, "An Act to revise various Acts to resolve multiple amendments or additions, to correct technical errors and other patent errors and omissions, to revise cross-references, to delete obsolete or duplicative provisions, to renumber certain Acts and to eliminate certain special funds in the State treasury that have been terminated by operation of law." The act extended application of section 115—5.1 of the Code of Criminal Procedure of 1963 from "any criminal prosecution" to "any civil or criminal action."

The only authority cited by plaintiff in support of her argument that Public Act 82—783 is unconstitutional is *People v. Bullard* (1975), 61 Ill. 2d 277, 335 N.E.2d 465. In *Bullard,* the defendant argued that a revisory act amending the Illinois Vehicle Code (Ill. Rev. Stat. 1973, ch. 95½, par. 1—101 *et seq.*) violated article IV, section 8(d), of the Illinois Constitution. The supreme court rejected this argument, stating that the act was "plainly a revisory act and does not make a substantive change in [the Vehicle Code]." (61 Ill. 2d 277, 278, 335 N.E.2d 465, 466.) The court stated that revisory acts which make no substantive changes, add no new matter, and merely incorporate the provisions of prior amendments are specifically exempt from the single-subject requirement of article IV, section 8(d) of the Constitution.

The amendment to section 115—5.1 of the Code of Criminal Pro-

cedure of 1963 appears under article III of Public Act 82—783. Section 1 of article III states: "This Article provides for the nonsubstantive revision or renumbering or repeal of Sections of Acts necessitated by the amendment, addition or repeal of Sections by two or more Public Acts of the 82nd General Assembly, which multiple action was not resolved by one of the Acts affecting the particular Section." The two acts of the 82d General Assembly affecting section 115—5.1 of the Code of Criminal Procedure of 1963 are Public Act 82—221 and Public Act 82—280. Public Act 82—221 amended section 3.01 of "An Act in regard to evidence and depositions" (Ill. Rev. Stat. 1981, ch. 51, par. 3.01). Prior to the amendment, this section read:

"In any criminal action the records of the coroner's medical and laboratory examiner summarizing and detailing the performance of his official duties performing medical examinations upon deceased persons or autopsies, or both, and kept in the ordinary course of business of the coroner's office, duly certified by the county coroner or chief supervisory coroner's pathologist or medical examiner, shall be received as competent evidence in any court of this State, to the extent permitted by Section 3.03. These reports, specifically including but not limited to the pathologist's protocol, autopsy reports and toxicological reports, shall be public documents and thereby may be admissible as prima facie evidence of the facts, findings, opinions, diagnoses and conditions stated therein." (Ill. Rev. Stat. 1979, ch. 51, par. 3.01.)

Public Act 82—221 extended the application of section 3.01 from "any criminal action" to "any civil or criminal action."

Public Act 82—280 added the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 1—101 *et seq.*). This act also added section 115—5.1 to the Code of Criminal Procedure of 1963. The first paragraph of section 115—5.1 was identical to section 3.01 of "An Act in regard to evidence and depositions" *except* section 115—5.1 was made applicable only to "any criminal prosecution." Public Act 82—280 also repealed "An Act in regard to evidence and depositions" (Ill. Rev. Stat. 1981, ch. 51, par. 1 *et seq.*).

Public Act 82—221 was passed in the General Assembly on June 18, 1981, and approved August 14, 1981, effective January 1, 1982. Public Act 82—280 passed in the General Assembly on June 28, 1981, and approved August 19, 1981, effective July 1, 1982. Public Act 82—783 passed in the General Assembly on June 29, 1982, and approved and effective July 13, 1982. Public Act 82—221 was in effect at the time Public Act 82—783 passed the General Assembly on June 29,

1982. Public Act 82—280 was not effective until two days later, July 1, 1982.

It is apparent that Public Act 82—783 was intended to incorporate the amendments of Public Act 82—221 and Public Act 82—280. Although section 3.01 of "An Act in regard to evidence and depositions" was repealed by Public Act 82—280 after that section was made applicable to civil actions, we do not interpret this action as evidence of a legislative intent to limit the admissibility of records of the coroner's medical or laboratory examiner to criminal prosecutions only. Rather, the failure of Public Act 82—280 to recognize the amendment of Public Act 82—221 is most likely due to oversight. The two bills which comprised these acts were before the legislature at the same time and were approved by the governor only five days apart. We hold that Public Act 82—783 does not violate article IV, section 8(d), of the Illinois Constitution insofar as it amends section 115—5.1 of the Code of Criminal Procedure.

■ *Plaintiff* next argues that Bobowski's report to the coroner was inadmissible as "reconstruction testimony." A number of cases have been cited by plaintiff for the proposition that reconstruction testimony is inadmissible when there is eyewitness testimony from which the jury can draw its own conclusions as to the circumstances of an accident. Plaintiff notes Bobowski's testimony that he had been told the collision had occurred at 4:30 p.m. and he assumed, therefore, that the accident took place during the day. Bobowski also testified that, based on the injuries to the decedent, he estimated the decedent was traveling at 10 to 20 miles per hour at the time of impact.

Plaintiff apparently argues that Bobowski's testimony with respect to the time of the accident and the speed at impact was "reconstruction testimony" and, since Bobowski held these assumptions at the time he prepared the medical report, the medical report was also improper reconstruction testimony.

We do not view the medical report as reconstruction testimony. First, the medical report makes no statements with regard to the speed the decedent was traveling at the time of the accident. Bobowski's testimony that he assumed the speed of impact was 10 to 20 miles per hour was elicited by plaintiff's attorney. Second, although the medical report states that the collision occurred at approximately 4:30 p.m., there is no indication in the report that the time was deduced by reconstructing the accident.

■ ■ Plaintiff next argues that the trial court erred in limiting her examination of Dr. Bobowski by refusing to permit leading questions. Plaintiff maintains that since Bobowski's report to the coroner

was offered into evidence by defendants, plaintiff should have been allowed to question Bobowski as if he were being cross-examined.

Defendants argue that since Bobowski was called by plaintiff he could not be cross-examined by plaintiff unless the trial court determined that Bobowski was hostile or unwilling. See Supreme Court Rule 238(b) (87 Ill. 2d R. 238(b)).

Section 115—5.1 of the Code of Criminal Procedure of 1963 provides that either party may subpoena as a witness a person who prepares medical reports to the coroner offered into evidence. The statute does not address the manner in which the party may examine such persons. We find that the trial court has discretion over the manner in which a party may examine a witness called under section 115—5.1 of the Code of Criminal Procedure of 1963. Supreme Court Rule 238(a) (87 Ill. 2d R. 238(a)), which allows a party to attack the credibility of his own witness, has weakened the leading-question objection. In the present case, however, the trial court did not abuse its discretion in restricting plaintiff's use of leading questions in examining Dr. Bobowski.

■ Plaintiff next argues that the trial court erred in failing to instruct the jury with a definition of proximate cause. The trial court refused to give plaintiff's instruction No. 8 which was based on Illinois Pattern Jury Instruction (IPI), Civil, No. 15.01 (2d ed. 1971). IPI Civil 2d No. 15.01 provides:

"When I use the expression 'proximate cause' I mean [that] [a] [any] cause which, in natural or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]"

The "Notes on Use" for this instruction state: "This instruction in its entirety should be used only when there is evidence of a concurring or contributing cause to the injury or death (other than acts or omissions of the plaintiff). In cases where there is no evidence of a concurring or contributing cause, the short version without the bracketed material should be used." IPI Civil No. 15.01 (2d ed. 1971).

Plaintiff's instruction No. 8 included the bracketed material. Defendants objected to this instruction on the grounds that the "long version" of IPI Civil 2d No. 15.01 would prejudice their defense. They argued that the jury may have been misled into believing that defendants could have been liable for the negligence of either Michael Hogan or Aimee Sawlaw even if it was found that decedent died of a heart attack prior to the collision. The trial court sustained defendants' ob-

jections and refused plaintiff's instruction No. 8.

Defendants cite a number of cases which have held that the trial court should not give the long version of IPI Civil 2d No. 15.01 where the plaintiff's predisposition to sustain the injury complained of is alleged to have been the contributing or concurring cause of the injury. *Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 464 N.E.2d 866 (error to give the long version of IPI Civil 2d No. 15.01 in medical malpractice case where evidence showed that plaintiff was predisposed to develop the medical condition which was the subject of the lawsuit); *Lindsay v. Appleby* (1980), 91 Ill. App. 3d 705, 414 N.E.2d 885 (error to give long version of IPI Civil 2d No. 15.01 in action for brain injuries arising from an automobile accident where plaintiff had a prior manic depressive condition); *Dolan v. Crammond* (1979), 71 Ill. App. 3d 289, 389 N.E.2d 206 (improper to give the long version of IPI Civil 2d No. 15.01 in action arising from an automobile collision where plaintiff had prior history of back and neck injuries).

The cases cited by defendants are distinguishable from the present case. In each of the cases cited, there was only one defendant, and there was no evidence of a concurrent or contributing cause of the plaintiff's injury other than the defendant's negligence and the plaintiff's predisposition toward the injury. In the present case, there were two defendants who were alleged to have committed distinct negligent acts which produced the injury; namely, Michael Hogan's stopping his truck in the southbound lane and Aimee Sawlaw's stopping her truck in the northbound lane. We hold that where the complaint alleges and the evidence shows that the injury complained of could have been caused by the conduct of two or more persons other than the plaintiff or decedent, the trial court should give the long version of IPI Civil 2d No. 15.01 when it is tendered.

■ The court's refusal to give plaintiff's instruction No. 8 was sufficiently prejudicial to plaintiff to require a new trial. After the court refused to give the instruction, neither party tendered a short version of the definition of proximate cause. Consequently, the jury did not receive an instruction defining proximate cause. Plaintiff argues that the prejudice was apparent when the jury, during its deliberations, wrote the following note to the trial court: "We need to know if we are to consider negligence at time of impact only or including time preceding impact." The trial court responded with a note stating that the answer to the question should be found in the instructions previously given to the jury. However, since the jury was given no definition of proximate cause, it was unlikely that the given instructions would have adequately informed the jury of the relationship

between the alleged negligent conduct and the decedent's death.

▮ Plaintiff next argues that the trial court erred in refusing to instruct the jury with respect to defendants' alleged violation of section 11—1416 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1416). Plaintiff's instruction No. 22A stated:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

No person shall wilfully and unnecessarily hinder, obstruct or delay, or wilfully and unnecessarily attempt to delay, hinder or obstruct any other person in lawfully driving or traveling along or upon any highway within this state so as to interfere with the effective movement of traffic.

If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was negligent before or after the time of the occurrence."

The trial court refused to give this instruction on the grounds that the statutory language cited within the instruction was not a complete statement of section 11—1416. Section 11—1416 states in full:

"No person shall wilfully and unnecessarily hinder, obstruct, or delay, or wilfully and unnecessarily attempt to delay, hinder or obstruct any other person in lawfully driving or traveling along or upon any highway within this State or offer for barter or sale merchandise on said highway so as to interfere with the effective movement· of traffic." Ill. Rev. Stat. 1981, ch. 95½, par. 11—1416.

Plaintiff's instruction No. 22A did not include the words "or offer for barter or sale merchandise on said highway." Plaintiff argues that she did not need to include the omitted portion because there were no allegations or evidence of anyone offering for barter or sale merchandise on the highway.

Defendants argue that section 11—1416 is directed toward the obstruction of traffic by *pedestrians* and is not applicable to cases involving obstructions by motor vehicles. Defendants maintain that the obstruction of highways by motor vehicles is governed by section 11—1301(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—1301(a)). Defendants further note that the jury was instructed on defendants' alleged violation of section 11—1301(a) in plaintiff's instruction No. 21.

Defendants also argue that plaintiff's instruction No. 22A was improper because it refers to a person who "wilfully and unnecessarily"

hinders, obstructs or delays traffic. Defendants maintain that an instruction based on wilful conduct was improper in view of the pleadings. Although the original complaint alleged wilful and wanton conduct on the part of Aimee Sawlaw and Sandra Hogan, the complaint was subsequently amended and the wilful and wanton counts were omitted.

We are persuaded by defendants' arguments and hold that the trial court did not err in refusing plaintiff's instruction No. 22A. The trial court properly gave plaintiff's instruction No. 21, which dealt with the section of the Illinois Vehicle Code on obstruction of highways by motor vehicles.

■ Plaintiff next argues that the trial court erred in failing to instruct the jury with regard to defendants' failure to call sheriff Forrest Sawlaw as a witness. Plaintiff's instruction No. 14, modeled after IPI Civil No. 5.01 (2d ed. 1971), instructed that when a party fails to produce a witness within its power to produce, the jury may infer that the testimony of that witness would be adverse if it believes each of the following elements: (1) The witness was under the control of the party and could have been produced by the exercise of reasonable diligence; (2) the witness was not equally available to an adverse party; (3) a reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him; and (4) no reasonable excuse for the failure has been shown.

Plaintiff maintains that the failure of defendant Aimee Sawlaw to produce her father, Forrest Sawlaw, was a proper basis for an IPI Civil 2d No. 5.01 instruction. Plaintiff cites the comment to IPI Civil 2d No. 5.01, which states: "A witness is not 'equally available' to a party if there is a likelihood that the witness would be biased against him, as for example a relative or an employee of the other party." Plaintiff argues that she was prejudiced by the court's failure to give this instruction because Forrest Sawlaw had an opportunity to observe the lighting conditions at the scene of the accident and to hear whether or not Aimee stated that she told Michael Hogan to get out of the way.

Defendants first argue that plaintiff could not have been prejudiced by Forrest Sawlaw's failure to testify as to the lighting conditions because he was not at the scene of the accident at the time the accident occurred. Defendants also note that they never disputed the testimony that Aimee told Michael to get out of the way. Consequently, there was no basis for an inference that Forrest Sawlaw's testimony would have been adverse to Aimee's testimony on this point.

Forrest Sawlaw was not an eyewitness to the accident. For IPI Civil 2d No. 5.01 to be properly given, it is necessary to say that a reasonably prudent person would have produced the witness if he believed the testimony to be favorable. The plaintiff fails to show this. Also, it is not shown that the witness, although being the father of defendant Aimee Sawlaw, as well as being sheriff of Piatt County, was under the control of defendants. Under the facts of this case, it is not shown that the witness was not equally available to the plaintiff.

We find that the trial court did not err in refusing to instruct the jury with plaintiff's instruction No. 14.

Reversed and remanded for a new trial consistent with the findings in this opinion.

Reversed and remanded.

GREEN, P.J., and TRAPP, J., concur.