THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARY A. TATE et al., Defendants-Appellants.

(No. 58883;

First District (5th Division)—December 27, 1974.

Paul Bradley, of State Appellate Defender's Office, of Chicago, for appellant Mary A. Tate.

Bernard B. Brody, Edward M. Genson, and Sam Adam, all of Chicago, for appellant Willie Bryant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and John B. Adams, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

A jury found Mary A. Tate and Willie Bryant guilty of the murders of Othas Jameson and Freddie Tate in violation of section 9—1 of the

Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, par. 9—1.) Tate was sentenced to a term of 20 to 30 years and Bryant was sentenced to 15 to 20 years.

On appeal, Mary A. Tate contends: (1) that the evidence supports only a conviction of voluntary manslaughter, (2) that inadequate sentencing procedures were employed, and (3) that her minimum sentence was excessive. Willie Bryant contends: (1) that he was not proved guilty beyond a reasonable doubt, 2) that his conviction should be reversed because the State failed to call a "life and death" witness regarding the death of Freddie Tate, (3) that the trial court erred in denying his request for the grand jury testimony of Sabrina Tate, and (4) that the trial court erred in denying a mistrial.

The following pertinent evidence was adduced at trial. For the State:

*Minnie Jameson:*

She is the mother of Othas Jameson. On February 27, 1970, Othas was alive, but on March 1, 1970, he was dead.

*Lewis Tate:*

He is Mary A. Tate's brother. At about 4:05 P.M. on Saturday, February 29, 1970, he arrived at the rear building at 3330 W. Fulton after working all day at Meyercord Co. Shortly after his arrival, Sabrina Tate, defendants' 13-year-old daughter, entered the rear building, but he did not talk to her. She was staggering as though she had been drinking. After a few minutes, she left, returning to the first-floor apartment in the front building at 3330 W. Fulton where she lived with her parents. He and his nephew Ernest Jameson then went to a local tavern and purchased a bottle of Cutty Sark which when they returned was placed, unopened, on the kitchen table in the rear building. While he and Ernest were in the kitchen, his sister Mary A. Tate and Willie Bryant entered the building. His brother Freddie Tate and his nephew Othas Jameson were sitting in the living room at the front of the house. Mary asked Othas and Freddie who had made Sabrina drunk. Othas denied giving Sabrina anything. Willie then asked whether they were going to tell them who had made Sabrina drunk. James Lee told them that Sabrina had said that Willie's son and a Puerto Rican had given her the alcohol. Willie left and Mary, before leaving, said they would return.

A few minutes later, defendants returned, entering the front door with a pass key. Willie approached the witness as he was standing in the hallway which runs through the middle of the rear building. Although he did not see what was in Willie's hand, Willie had his hand in his back pocket and told everyone to leave. He told Willie that they were going to leave as soon as Cora, Freddie's girlfriend, returned from the front building. When Willie pushed Ernest, Ernest grabbed Willie and they

started to fight, ending up in the washroom. As Othas and Freddie approached from the living room, Mary, who was standing near the kitchen at the back of the house, told them that she had the gun and shot Freddie. Freddie grabbed the witness and asked Mary why she had shot him. Mary then put the gun to the witness's head and said she should shoot him too. He helped Freddie out the back door to Ernest's car. As he left he heard two more shots. When he returned he saw Othas lying in the hall. He heard Willie tell Mary she had done enough shooting; and he went to help Othas. He and Richard Jones accompanied Ernest as he drove the victims to the hospital. On the way to the hospital they struck a C.T.A. bus and Freddie, who was in the back seat of Ernest's car between the witness and Richard, fell off the seat.

*James Lee:*

He is Mattie Tate's boy friend. After leaving work at Hinckley & Schmidt, he stopped at a liquor store and purchased a pint of J & B Scotch. When he arrived home at the rear building at 3330 W. Fulton, he spoke with Freddie and Othas in the living room. Othas was drunk. Subsequently, Lewis Tate arrived. When Sabrina came in, he did not pay particular attention to her, but she did talk to Lewis. After Sabrina left, Mary and Willie entered the building. Willie asked Othas who had made Sabrina drunk and Othas denied giving her anything. Willie slammed the door and left; but Mary, before leaving, said they would return. Ernest Jameson, who was also drunk, entered the building after Mary and Willie had left.

Willie and Ernest started arguing when he and Mary returned to the rear building. Mary was standing in the kitchen door near the back of the house. A fight, which ended up in the washroom, resulted when Willie pushed Ernest. The witness walked past Mary into the kitchen. Freddie was standing by the Coke machine opposite the washroom and Othas entered the washroom. Mary then shot Freddie; she threatened Lewis by pointing the gun at his head; she shot Othas as he came out of the washroom; and she fired a shot at Ernest.

*Ernest Jameson:*

He is Othas Jameson's brother and Mary A. Tate's nephew. He spent most of the afternoon on Saturday, February 28, 1970, drinking at home. Admittedly he was intoxicated. Sometime after 4 P.M., he went for a drive and happened to meet his brother Othas. Together they drove to 3330 W. Fulton to visit their uncle, Freddie Tate, who lived in the rear building. After their arrival, Lewis came in. He and Lewis went to a tavern and purchased a pint of Cutty Sark. He was in the kitchen when he first saw Willie and Mary. Willie, who had his hand in his pocket, told Lewis to leave and pushed the witness. When Willie pulled a gun, he

grabbed Willie and they started fighting, ending up in the washroom. During the fight he heard three shots and saw Mary with another gun. She told him to let go of Willie or she would shoot him. As he left, he saw Othas lying on the floor outside the washroom and carried him to the car. As he was driving to the hospital, they hit a C.T.A. bus.

*Mattie Tate:*

She is Mary A. Tate's sister and James Lee's girl friend. Sometime after 4 P.M. on Saturday, February 28, 1970, while she was in the kitchen of the rear building, Sabrina Tate came in. She was grinning and walking strangely. About 10 minutes after Sabrina left, Willie came over, by himself, to look at the lights in the washroom. Later she heard Mary and Willie arguing with Othas and Freddie. Mary accused them of making Sabrina drunk. Othas denied the accusation. The witness went into the living room and asked what was wrong. Soon thereafter, Willie left and Mary, before leaving, said they would return. The witness then went over to the front building where she saw Willie standing by the closet holding a gun and some bullets. Mary was talking to Cora, Freddie's girl friend. The witness told Mary that Sabrina had said she had gotten the alcohol from a Puerto Rican and Willie Bryant's son. Willie then told Mary to come with him to the rear building. When Mary asked for what, Willie responded that she had said she was going out in back. Mary assented but said that she would not go empty-handed. Willie then went to the closet and gave Mary another gun. The witness, who did not think anything would happen, stayed in the front building tending to Sabrina, who was sick. Ten or 15 minutes later she heard one shot. She went outside and saw Lewis screaming that Mary had shot Freddie. She saw Mary, with the gun in her hand, and asked her why she had shot Freddie. Mary said she was not aiming but that Freddie jumped into the line of fire.

Following this testimony, the parties stipulated that a gun, which was identified and admitted into evidence, was the weapon which caused the death of Freddie Tate. The parties also stipulated that had the pathologists, Doctors Salgia and Shalgos, been called they would have testified that Freddie Tate died of a bullet wound in the chest and was not under the influence of alcohol at the time of his death and that Othas Jameson died of a bullet wound in the back and was under the influence of alcohol at the time of his death.

*Chicago Police Officer John Moore:*

After receiving a radio call, he and his partner arrived at 3330 W. Fulton. They recovered and inventoried a revolver which had three live cartridges. They then proceeded to Garfield Hospital, where they dis-

covered that the two people who had been shot had also been involved in an automobile accident and had been pronounced dead on arrival. He identified photographs of the interior of the rear building at 3330 W. Fulton which were subsequently admitted into evidence.

*Chicago Police Officer Thomas Murphy:*

After Mary A. Tate had been advised of her rights, she told him that when Sabrina left to go to the rear building, she laid down. When she awoke she observed that Sabrina had returned and was drunk. She told Willie and he went over to the rear building where he was cussed out by Freddie Tate. Both of them then went back to the rear building. The Jameson brothers jumped on Willie and during the struggle someone dropped a gun. She picked up the gun; told them to stop; and fired three shots.

For the defense:

*John Peddie:*

He is personnel director at Meyercord Co. Lewis Tate did not work there on Saturday, February 28, 1970.

*Sabrina Tate:*

She is the daughter of both defendants. Lewis and Freddie Tate entered the front building at 3330 W. Fulton at about 2 P.M. on the day of the occurrence and her mother Mary fed them some lunch. Later, she and a friend Johnny Coleman went to the rear building. There she saw James Lee in the living room drinking whiskey from a bottle of Jim Beam. Ernest, Othas, Freddie, and Lewis were in Freddie's room smoking marijuana. She and Johnny Coleman were given some marijuana. Othas was rolling the marijuana cigarettes and passing them around. Mattie Tate came in and smoked some too. The witness began to feel dizzy. Before she went home, Othas, at Lewis's request, gave her some Calvert whiskey, but she drank very little. She went home feeling sick and vomited in her bedroom. She told her mother that Freddie and Othas had given her marijuana. Mattie Tate came over and helped the witness while she was sick.

*Charles Scott and Lorina Ivy:*

They are friends of Willie Bryant. In their opinions, Willie Bryant's reputation in the community for peacefulness and veracity is good.

The parties stipulated that had Mrs. Wanda S. Ustaborowicz, the payroll clerk at Hinckley & Schmidt, been called to testify she would have stated that James Lee was not working there on February 28, 1970.

*Richard Lee Jones:*

He was a boarder at the rear building at 3330 W. Fulton. After leaving work on the day of the occurrence, he drank a half-pint of whiskey

with some fellow employees and then came home. When he arrived he drank more whiskey with Freddie and Othas and then went to his room. Although he did not see Sabrina, he did see Freddie, Othas, and Lewis smoking marijuana. During the time he was there, Willie came over and looked at the light fixture in the washroom. Subsequently, Freddie, Othas, and Lewis started struggling over a gun in the kitchen. This struggle spilled over into the hallway and washroom where Mary also participated. Freddie was saying "Get the gun." Two shots were fired and Freddie came into his room asking for help. He helped Freddie to the car; and the others brought Othas. On the way to the hospital, they hit a C.T.A bus and Freddie fell out of the car onto the pavement.

*Charles Tate:*

He is Mary A. Tate's cousin. At 5:30 P.M. on the day of the occurrence, when he came home to the front house at 3330 W. Fulton, he saw Mary arguing with Freddie and Lewis about making Sabrina high. When he asked Mary what was wrong, she brought him into Sabrina's room where Sabrina was lying sick on her bed, vomit everywhere. Mary said: "This is what is wrong, look what they let [Sabrina] do—have [Sabrina] do." He asked Freddie, who seemed sober, to come with him to buy a bottle of whiskey. After they returned to the rear building, which smelled of marijuana, Willie and Mary came over and Willie asked Ernest, Othas, Freddie, and Lewis to leave. Ernest told Willie that the house was not his, and Willie left. The witness did not hear Mary say they would return. Although the witness asked Mattie to ask the others to leave, she did nothing. Mary and Willie then re-entered the building. As Willie started walking down the hall, Ernest pushed Willie into the washroom. Freddie, Othas, Lewis, and Mary then all ran toward the washroom. A gun fell. Freddie said, "Get the gun," and a struggle for the gun ensued. The witness went into the kitchen and while he was there heard two shots. Freddie then came into the kitchen for help and the witness ran to call the police.

*Mary A. Tate on her own behalf:*

At about 2 P.M. on the day of the occurrence, she fed her brothers Freddie and Lewis some lunch. Freddie was high. After eating they left, and shortly thereafter Sabrina and Johnny Coleman went to the rear building. The witness then took a nap. At about 4 P.M., Freddie and Lewis returned for more food. While they were there, the witness found Sabrina in her room with vomit everywhere. Sabrina told her that Lewis, Freddie, Mattie, Othas, Ernest and Johnny Coleman had given her marijuana. The witness started fussing at Freddie and Lewis. When Charles Tate entered the building, he and Freddie left to go to the liquor store.

Lewis also left. The witness and Willie Bryant then went to the rear building where they found Ernest and Othas in the living room. When Willie spoke to them, Ernest told Willie that he did not own the building. Willie said all right and they returned to their apartment. She did not say, "We will return."

When she and Willie arrived at the front building, Willie asked her to return to the rear building with him to fix a light fixture there. She was not angry at Freddie and Othas. As Willie was walking down the hall in the rear building Ernest ran past Willie and pushed him into the washroom and into the bathtub where they started fighting. Ernest was on top of Willie. During this fracas, a gun fell out of Ernest's pocket. Freddie started yelling: "Get the gun." The witness, who is left-handed, picked up the gun with her right hand and transferred it to her left. By that time Lewis and Othas had reached the washroom and she, Freddie and Othas started struggling over the gun. During this struggle the gun discharged twice and Freddie and Othas were wounded. Othas was able to walk out of the building with Ernest. After Lewis, Freddie, Othas, Ernest and Richard Jones left, she helped Willie out of the bathtub. She told Mattie she "didn't shoot anybody," and she denied having any conversation with Officer Murphy.

*Willie Bryant on his own behalf:*

When he entered his apartment in the early evening of February 28, 1970, Mary was upset and asked him to look in Sabrina's room. He saw Sabrina lying on her bed with vomit everywhere. Mary asked him to tell the people in the rear building not to smoke marijuana. He and Mary went over to the rear house. He told Othas and Ernest who were sitting in the living room that he did not want them smoking marijuana there. One of them told him that he was not the owner of the building, but rather his wife, Signora, owned it. He and Mary left to return to the front building and later they returned to the rear building to fix a light fixture. He was carrying the fixture in his right hand and had an extension cord in his rear pocket. Neither he nor Mary had guns. He was not angry and he did not think Mary was angry either. As he was walking down the hall in the rear building, Ernest ran down the hall, grabbed him, pushed him into the bathtub, and jumped on top of him. He did not hear any shots. Subsequently, Mary helped him out of the bathtub because he had injured his back.

The jury found both defendants guilty of the murders of Freddie Tate and Othas Jameson. After a hearing in aggravation and mitigation, the court sentenced Mary A. Tate to 20 to 30 years and Willie Bryant to 15 to 20 years.

Opinion

## I.

Mary A. Tate contends that the evidence adduced at trial does not support a conviction of murder, but only of voluntary manslaughter. She now argues that she was acting under a sudden and intense passion resulting from serious provocation sufficient to incite a reasonable person (Ill. Rev. Stat. 1969, ch. 38, par. 9—2) rather than acting intentionally or knowingly (Ill. Rev. Stat. 1969, ch. 38, par. 9—1). However, despite numerous variations in the testimony, we do not believe the evidence supports her contention.

■■ Although there is some evidence that Mary was upset because of her daughter's condition, there is no evidence that she was acting under a sudden and intense passion at the time Freddie Tate and Othas Jameson were shot. At trial Mary Tate herself testified that she was *not* angry with Freddie and Othas and her testimony was confirmed by her codefendant Willie Bryant who testified that he did not think she was angry. Moreover, defendant's current manslaughter theory is totally inconsistent with the theory she advocated at trial. There, her theory, supported by her testimony and the testimony of the other defense witnesses, was that she went to the rear building the second time to help Willie fix some lights and that while there became involved in a struggle over a gun which accidentally discharged resulting in the deaths of Freddie and Othas. The jury heard this evidence, but chose to believe the State's theory that Mary intentionally shot Freddie and Othas. Furthermore, despite defense objection, the jury was instructed regarding voluntary manslaughter, but did not find in defendant's favor on that issue. No citation is required to support the principle that it is the province of the trier of fact to weigh the credibility of witnesses. In this case, where there are numerous variations in the testimony concerning what occurred, the trier of fact's observation of the demeanor of witnesses is particularly significant. We will not substitute our judgment for that of the jury in this case.

■■ Mary A. Tate next contends that inadequate sentencing procedures were employed. She points out that no presentence report was submitted on her behalf and that defense counsel offered nothing on her behalf in mitigation. In *People v. Brezezinski*, 15 Ill.App.3d 509, 305 N.E.2d 32, this court determined that a trial court at a hearing in aggravation and mitigation occurring before the adoption of the Unified Code of Corrections need not order or consider a presentence report. Since the hearing in aggravation and mitigation in the instant case occurred prior to the adoption of the Unified Code of Corrections, the holding in *Brezezinski*

is applicable here. Furthermore, defense counsel in his argument in mitigation pled for mercy for Mary A. Tate, emphasizing the unfortunate nature of these particular crimes and the conflicts in the testimony. In these circumstances, we cannot say that inadequate sentencing procedures were employed.

■■ Mary A. Tate lastly contends that her minimum sentence was excessive. She argues that we should either reduce her sentence pursuant to Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1969, ch. 110A, par. 615(b)(4)) or that we should remand the matter to the trial court for reconsideration of the minimum sentence in light of the Unified Code of Corrections. Rule 615(b)(4) does permit reviewing courts to reduce sentences. However, proper sentencing is, in the first instance, a matter for the trial court's determination, and the sentence imposed here was within the statutory limits. After reviewing the facts of the case, we cannot say that the sentence here does not fit the crime. Relying upon *People v. Williams*, 10 Ill.App.3d 456, 294 N.E.2d 98, defendant further suggests that section 5—8—1(c)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(1)) placed a burden upon the trial court, in a murder case before the adoption of the Unified Code, to show why the defendant's minimum sentence should exceed the statutory minimum for the crime. Section 5—8—1(c)(1) provides:

"The minimum term shall be set according to the following limitations:

(1) for murder, the minimum term shall be 14 years unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term."

Even assuming that section 5—8—1(c)(1) of the Unified Code is applicable, we believe the trial court here, being advised of the nature and circumstances of the instant crime was within its authority in sentencing defendant to a term of 20 to 30 years for the murder of her brother and her nephew.

## II.

■■■ Willie Bryant contends that he was not proved guilty beyond a reasonable doubt. The evidence adduced at trial does not indicate that Willie Bryant, himself, shot anyone. He was in the bathtub struggling with Ernest Jameson at the time of the shooting. However, the law is clear that a person may be held criminally liable for the conduct of another in certain limited circumstances. Section 5—2(c) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 5—2(c)) provides:

"A person is legally accountable for the conduct of another when:

\* \* \*

Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

The jury in the instant case was instructed regarding accountability.*

Despite variations in the testimony, the evidence in the instant case indicates that Willie Bryant did indeed aid and abet the commission of the crime here. Mattie Tate's testimony indicates that defendant, after getting a gun for himself, also gave Mary A. Tate a gun immediately before they both proceeded to the rear building. The testimony of Ernest Jameson indicates that Willie pulled a gun before they began fighting and Ernest's testimony is corroborated to some extent by Lewis Tate's testimony that Willie was in the process of bringing his hand out of his rear pocket when Willie and Ernest began fighting. Although there is evidence to the contrary, the jury, after hearing the testimony and weighing the credibility of witnesses, resolved the issues against defendant. We will not disturb this finding in the instant case; defendant was found guilty beyond a reasonable doubt.

■■■ Willie Bryant next contends that his conviction must be reversed because the State failed to call a "life and death" witness regarding the death of Freddie Tate. The testimony of a "life and death" witness is a method of proving an element of the corpus delicti of the crime of murder which consists of two elements: (1) the fact of death, and (2) the fact that death was caused by criminal agency. (*People v. De Mario*, 112 Ill.App.2d 175, 251 N.E.2d 267.) Defendant argues that while the State, through the stipulation regarding the testimony of the two pathologists, did prove the second element of the corpus delicti, it did not prove the first element. Specifically, defendant suggests it was not established that the body examined by the pathologists was that of Freddie Tate. A similar argument was made in *People v. Schneider*, 360 Ill. 43, 50-51, 195 N.E. 430, 433. There defendant argued that the corpus delicti of the crime was not proved since, because of the inconsistencies in the spelling of the decedent's name, the man who died was not proved to be the man who was injured by defendant. The supreme court, after examining the facts of the case and noting the similarities in injuries and in spelling, determined there was sufficient evidence that the deceased was the man defendant had injured.

---

* The following instruction was given to the jury:
"A person is responsible for the conduct of another person when, either before or during the commission of a crime, and with the intent to promote or facilitate the commission of a crime, he knowingly solicits, aids, abets, agrees or attempts to aid the other person in the planning or commission of the crime. I.P.I. # 5.04 Given."

In the instant case, the testimony clearly established that Freddie Tate was shot. The injuries he was said to have received correspond to the injuries reported by the pathologists on the body they examined. The stipulation entered into by the parties regarding cause of death referred to Freddie Tate, and Officer Moore testified that the two people who had been shot and who had been involved in an automobile accident were pronounced dead on arrival at Garfield Hospital. In these circumstances, we believed that the fact of Freddie Tate's death was sufficiently proved and therefore the failure to call a "life and death" witness was not reversible error.

■■ Willie Bryant also contends that the trial court erred in denying his request to be provided with the grand jury testimony of Sabrina Tate. Bryant's motion at trial was based upon *Brady v. Maryland*, 373 U.S. 83. In *Brady*, the United States Supreme Court determined that due process of law is violated when the State suppresses evidence favorable to defendant which is material to either guilt or punishment. In the instant case, while the State did not turn over to the defendant Sabrina Tate's grand jury testimony, Sabrina Tate testified for the defense and defendant knew the substance of her grand jury testimony. Defendant was not prejudiced by the State's failure to supply him with Sabrina Tate's grand jury testimony. See *Haywood v. State* (Tex. Crim. App. 1974), 507 S.W.2d 756, 759-760.

■■ Bryant lastly contends that the trial court erred in denying his motion for a mistrial. During jury deliberations, one of the jurors discovered that one of the live cartridges taken from the murder weapon was a "hang fire," and he reported the matter to the court, which denied a defense motion for a mistrial. Following the deliberations, the court inquired into the matter with the juror who had discovered the "hang fire," who stated that the jury's verdict was not affected by this discovery. A motion for mistrial is addressed to the sound discretion of the court (*People v. Dolgin*, 415 Ill. 434, 114 N.E.2d 389), and in these circumstances we cannot say that the trial court abused its discretion in denying a mistrial.

Therefore, the judgments of the circuit court of Cook County are affirmed with regard to both defendants.

Affirmed.

SULLIVAN, P. J., and BARRETT, J., concur.