THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
AVON GUTHRIE, Defendant-Appellant.

First District (1st Division)    No. 79-908

Opinion filed June 9, 1980.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Terrence M. Burns, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Avon Guthrie (defendant) was found guilty of voluntary manslaughter and sentenced to 6 years. She appeals.

In this court, defendant contends only that the State failed to prove beyond a reasonable doubt that the man she stabbed is dead.

Willie Jones testified that on May 28, 1977, at about 6:30 p.m., he was working on his car outside his home on West 54th Place. Jones saw defendant approach John Brewer, who was working on his automobile across the street. Defendant and Brewer talked and then defendant pulled a knife from her pocket and stabbed Brewer in the stomach. Brewer had nothing in his hands, which were at his sides when he was stabbed. Jones observed no indication of aggression by Brewer prior to the stabbing. After defendant stabbed Brewer she said, "I will kill him."

Willie Jones' daughter, Nora, testified that on the evening in question at about 6:30 p.m., she sat on the front porch of her father's home. She

also saw defendant stab Brewer in the stomach and saw no indication of aggression by Brewer. Nora heard defendant say, "I will kill the son of a bitch" after she stabbed Brewer.

Officer John Furmanek testified that on the night in question, he went to Tabernacle Hospital with his partner. At the hospital he spoke to Stewart Brewer, the brother of the victim. After the conversation, Furmanek, his partner and Stewart Brewer went to the vicinity of the stabbing incident. Stewart Brewer identified the defendant walking on the street. The police arrested defendant. A knife was found in her rear pocket.

Officer Richard Bedran testified he received an assignment resulting from a stabbing. Pursuant thereto he went to the Tabernacle Hospital. Thereafter he spoke to defendant after her arrest and again the next day. She told him she stabbed Brewer because Brewer had given her daughter drugs. She also told Bedran her daughter was staying away from home because of Brewer and she had seen Brewer give drug injections to her daughter several times. Defendant told Bedran that on the night of the stabbing, she approached Brewer as he worked on his automobile. She asked Brewer to bring her daughter home. Brewer pushed her and came towards her with a tool in his hand. Defendant stated she then stabbed Brewer. Bedran also testified John Brewer died between the time of the first and second conversations with the defendant. Bedran informed defendant on May 29, 1977, that Brewer had died.

Viola Gail testified she and defendant were close friends and she had visited defendant's house on several occasions. Gail had seen defendant's 15-year-old daughter, Mary Ann, in the company of John Brewer many times. On the day of the stabbing, Gail and defendant were at a laundromat in the neighborhood. The defendant and Gail's daughter, Margarice (Resa), left the laundromat. About 30 minutes later, Resa returned to the laundromat and told Gail of the stabbing incident.

Resa, 13 years old, was found competent to testify by the court. She testified that after she and defendant left her mother at the laundromat, they saw John Brewer working on his car on West 54th Place. Defendant walked across the street to talk to Brewer while Resa stayed behind to talk to a friend. Resa stated she then observed Brewer pushing defendant with both hands and he had a wrench in his left hand. Resa crossed the street and told Brewer to stop pushing defendant. Resa heard defendant and Brewer exchange obscenities. Brewer dropped his car keys, which he had in his hand. Defendant bent over to pick up the keys and as she did, Brewer raised his left hand which contained the wrench and then began to bring it down on defendant. Someone screamed and defendant came up with a knife in her hand and stabbed Brewer in the stomach.

Gregory Turner, defendant's husband, testified he had frequently seen his stepdaughter, Mary Ann, in the company of John Brewer. On one occasion, he saw Brewer holding a syringe while Mary Ann had a rag tied around her arm.

The defendant testified Brewer once rented a room in her house and he and Mary Ann were often together. On the evening of the stabbing, defendant saw Brewer working under the hood of his car as she and Resa Gail returned from the laundromat. Defendant went across the street and demanded Brewer bring her daughter home. Brewer refused and they began to curse each other. Brewer then began to push defendant. He had a tool in his left hand and keys in his right. Defendant knocked the keys from Brewer's right hand and bent down to pick them up. Defendant heard someone scream and saw Brewer's left hand coming down on her with the tool in his hand. Defendant testified she blocked his arm with her left arm and with her right hand, she pulled a knife from her rear pocket and stabbed Brewer in the stomach. She then put the knife back in her pocket and went to her landlady's house to use the washroom.

Louis Townsell, the victim's uncle, testified on rebuttal that on the night of the stabbing, he had loaned John Brewer two tools, a ratchet and a wrench, so Brewer could change the thermostat in his car. After the stabbing, Townsell went to the car and found the two tools lying on the motor of the car.

A pathological report and protocol was introduced into evidence. It was stipulated the report would be introduced for the limited purpose of cause of death and the medical findings by the pathologist.

Defendant contends the State did not prove the *corpus delicti* beyond a reasonable doubt because there is not sufficient evidence that the person to whom the pathological report and protocol related was actually the alleged victim, John Brewer.

It is defendant's theory that while the name and address of the deceased, typed on the pathological report, is that of John Brewer, there is no evidence that the examining pathologist or anyone in the examiner's office had personal knowledge that the body which was examined was that of John Brewer. Defendant argues, therefore, the pathological report is not probative of whether John Brewer is dead. Since the State failed to call a "life and death" witness, defendant concludes the State has failed to prove beyond a reasonable doubt that John Brewer is dead. We disagree.

"It is of course essential that the prosecution establish the *corpus delicti*. The elements to be proved in the case of a criminal homicide are proof of death and proof of a criminal agency causing death." (*People v. Gendron* (1968), 41 Ill. 2d 351, 360, 243 N.E.2d 208, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179.) Both elements "must be

established beyond a reasonable doubt." *People v. Brown* (1978), 57 Ill. App. 3d 528, 531, 373 N.E.2d 459, citing *People v. Benson* (1960), 19 Ill. 2d 50, 166 N.E.2d 80.

However, the law is clear that "[t]he *corpus delicti* must be clearly proved, but it may be proved by circumstantial evidence." (*People v. Schneider* (1935), 360 Ill. 43, 51, 195 N.E. 430; *Gendron*, 41 Ill. 2d 351, 360.) In *People v. Tate* (1974), 25 Ill. App. 3d 411, 323 N.E.2d 485, *aff'd* (1976), 63 Ill. 2d 105, 345 N.E.2d 480, a defendant convicted of two murders also argued it was not established that a body examined by two pathologists (whose findings as to cause of death were stipulated into evidence) was that of one of the victims shot by defendant. The court examined the circumstantial evidence of the case and concluded (25 Ill. App. 3d 411, 422):

> " * * * [T]he testimony clearly established that Freddie Tate [the victim] was shot. The injuries he was said to have received correspond to the injuries reported by the pathologists on the body they examined. The stipulation entered into . by the parties regarding cause of death referred to Freddie Tate, and Officer Moore testified that the two people who had been shot * * * were pronounced dead on arrival at Garfield Hospital. In these circumstances, we believed that the fact of Freddie Tate's death was sufficiently proved and therefore the failure to call a 'life and death' witness was not reversible error."

In the case at bar, Officer Furmanek testified he spoke with Stewart Brewer at Tabernacle Hospital after the stabbing. Officer Bedran testified John Brewer died sometime between Bedran's two conversations with defendant. Both of these police officers visited the hospital in discharging their official duties in investigation of the stabbing. Their presence at the hospital and conversation of one of them there with the brother of the victim, standing uncontradicted, is strong circumstantial evidence that the hospital to which the victim was taken was Tabernacle Hospital. The report shows that the person identified as John Brewer, with address corresponding to the testimony herein, was pronounced dead -at Tabernacle Hospital on May 29, 1977, at 9 a.m.

In the case before us, the report supports the testimony and shows cause of death was a "stab wound of abdomen lacerating portal vein causing massive internal bleeding." Except for the one stab wound, there was "no evidence of other trauma or foul play observed * * *."

In discussing the stipulation of counsel that the pathological report be received for the limited purpose of cause of death only, the State's Attorney also stated the parties would stipulate to "what was found during the examination of the victim's body." Defense counsel added that this had reference to "puncture marks and that sort of things in his arms."

The report did show that the body examined by the coroner showed chronic needle marks on each forearm. These circumstances cumulatively prove beyond a reasonable doubt that the pathological report and protocol concerned John Brewer.

In fact, however, the stipulation of the parties is of doubtful validity and it is not necessary for us to consider the virtually conclusive circumstantial evidence above detailed. The pertinent statutes (Ill. Rev. Stat. 1977, ch. 51, pars. 3.01 and 3.02) provide:

> "In any criminal action the records of the coroner's medical or laboratory examiner summarizing and detailing the performance of his official duties in performing medical examinations upon deceased persons or autopsies, or both, and kept in the ordinary course of business of the coroner's office, duly certified by the county coroner or chief supervisory coroner's pathologist or medical examiner, shall be received as competent evidence in any court of this State, to the extent permitted by Section 3.03. These reports, specifically including but not limited to the pathologist's protocol, autopsy reports and toxicological reports, shall be public documents and thereby may be admissible as prima facie evidence of the facts, findings, opinions, diagnoses and conditions stated therein.

> "A duly certified coroner's protocol or autopsy report, or both, complying with the requirements of Sections 3.01 and 3.03 may be duly admitted into evidence as an exception to the hearsay rule as prima facie proof of the cause of death of the person to whom it relates. The records referred to in this Section shall be limited to the records of the results of post-mortem examinations of the findings of autopsy and toxicological laboratory examinations."

■■ Thus, under the theory of judicial notice, the contents of the pathological report were admissible as *"prima facie* evidence of the facts, findings, opinions, diagnoses and conditions stated therein." (*People v. Garrett* (1975), 62 Ill. 2d 151, 163, 339 N.E.2d 753.) The phrase *"prima facie"* means "at first sight" or "on the face of it." (Black's Law Dictionary 1353 (4th ed. 1951).) The same source defines *"prima facie* evidence," the words used in the above statute, as "sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." "[I]t is clearly within the power of the legislature to prescribe that a fact shall be *prima facie* evidence of a certain other fact if it has a tendency to prove such other fact." *Morrison v. Flowers* (1923), 308 Ill. 189, 195, 139 N.E. 10; see also *Diederich v. Walters* (1976), 65 Ill. 2d 95, 102-03, 357 N.E.2d 1128.

■■ It follows necessarily that, quite aside from the above circumstantial evidence, the trial court and this court were obliged to accept as *prima*

*facie* evidence the facts stated in the coroner's report, including the name and address of the deceased appearing thereon. The addition of the cogent circumstantial evidence makes the situation even more clear and proves the *corpus delicti* beyond any reasonable doubt. Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.