THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE KENNEDY, Defendant-Appellant.

Fifth District   No. 5—83—0793

Opinion filed December 10, 1986.

Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Jonathan Haile, all of State's Attorneys Appellate Service Commission, and Frank Weiss, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Following a jury trial, defendant, Willie Kennedy, was convicted of murder and armed robbery. Defendant was sentenced to concurrent terms of imprisonment of 80 years for murder and 30 years for armed robbery. These sentences were ordered to run concurrently with a 60-year term of imprisonment which the defendant is presently serving in the State of Louisiana for armed robbery.

Defendant raises three contentions on appeal: (1) whether the *corpus delicti* was established beyond a reasonable doubt, (2) whether the trial court abused its discretion in requiring the defendant to wear leg irons before the jury, and (3) whether prior consistent statements of two accomplice-witnesses were properly admitted into evidence. The evidence introduced at trial will be recited only so far as necessary for an understanding of the issues raised on appeal.

Defendant's first contention on appeal is that the State failed to prove the *corpus delicti* beyond a reasonable doubt. According to defendant, the State failed to prove that Max Greenfield, the victim, had died and failed to prove his cause of death inasmuch as the coroner's conclusion as to the cause of death, contained in the coroner's certificate of death, was inadmissible at trial. Defendant contends that there was no proof that the Maxwell Greenfield referred to in the certified death certificate was in fact the same person that defendant is

alleged to have killed and contends that the State's proof was greatly deficient because there was no "life and death" witness who saw the victim after his death.

It is essential that the prosecution establish the *corpus delicti* beyond a reasonable doubt. The law is clear, however, that the *corpus delicti* may be proved by circumstantial evidence. (*People v. Guthrie* (1980), 85 Ill. App. 3d 831, 834, 407 N.E.2d 593, 596.) Our review of the record leads us to the conclusion that defendant's contention that the deceased described in the death certificate could possibly refer to a person other than the victim is without merit. We find there can be no doubt that the Maxwell Greenfield referred to in the death certificate is indeed the victim alleged to have been stabbed and killed by the defendant. Almost every fact and detail in the coroner's certificate of death corresponds to the other evidence provided by accomplice-eyewitnesses as well as several police officers who were at the murder scene, all of whom knew the victim. The cause of death, according to the death certificate, was multiple stab wounds of the abdomen, neck, and face, which occurred during a robbery at the victim's clothing store on January 6, 1976. This corresponds precisely to the testimony of both (1) the accomplice-eyewitnesses, one of whom, Calvin Harris, actually witnessed the stabbing, and (2) the police officers who arrived at the victim's clothing store and observed the victim lying in a pool of blood with lacerations to this throat, unable to talk but pointing to stab marks on his stomach. Officer Clayton of the Alton police department identified a photograph admitted at trial as depicting Maxwell Greenfield on the day of the crime lying on the floor of his store in a pool of blood. Additionally, the personal description of the deceased contained on the death certificate precisely corresponds to the evidence at trial and removes any doubt that the person referred to in the death certificate was indeed the victim, Maxwell Greenfield. The victim's name, age, occupation, surviving spouse's name, residential address, and date of death exactly correspond with the other trial evidence. Finally, apart from the testimony of the State's witnesses, the coroner's death certificate is *prima facie* evidence of the facts contained therein, one such fact being the name of the deceased. (Ill. Rev. Stat. 1985, ch. 38, par. 115—5.1.) We find that the State proved the *corpus delicti* beyond a reasonable doubt. *People v. Guthrie* (1980), 85 Ill. App. 3d 831, 407 N.E.2d 593.

■ Defendant's next argument is that no testimony was presented at trial to show the cause of death of the victim of the alleged murder. Defendant contends first that the certificate of death was hearsay and denied him his constitutional right to confront the wit-

nesses against him and, second, that there may have been an intervening cause of death.

The certified coroner's certificate of death was admitted into evidence over the hearsay objection of the defendant, under the authority of section 3.02 of "An Act in regard to evidence and depositions" (Ill. Rev. Stat. 1981, ch. 51, par. 3.02 (now Ill. Rev. Stat. 1985, ch. 38, par. 115—5.1)), which specifically provides that such a document, as a public record, is admissible as *prima facie* evidence of the facts, findings, opinions, diagnosis, and conditions stated therein. (See *People v. Garrett* (1975), 62 Ill. 2d 151, 163, 339 N.E.2d 753, 759; *People v. Guthrie* (1980), 85 Ill. App. 3d 831, 835, 407 N.E.2d 593, 596-97.) Citing *People v. Fiddler* (1970), 45 Ill. 2d 181, 258 N.E.2d 359, defendant argues that the supreme court held that a coroner's certificate of death is not admissible as evidence to show cause of death. We find, however, that defendant's reliance upon *Fiddler* is misplaced. The statute which provided the sole basis for the admission of the death certificate into evidence in *Fiddler* (Ill. Rev. Stat. 1967, ch. 111½, par. 73—25) was different from the present statute. Under that statute, the opinion of the examining physician as to cause of death was not a "fact" within the meaning of the statute. (Ill. Rev. Stat. 1967, ch. 111½, par. 73—25(6).) Moreover, as the supreme court pointed out in its opinion in *Fiddler*, unlike the instant case, an autopsy was performed under the statute then in effect and an autopsy would not have been performed unless the cause of death was still in question—thus, the autopsy itself was employed to establish the cause of death and therefore such evidence was hearsay. (*People v. Fiddler* (1970), 45 Ill. 2d 181, 185, 258 N.E.2d 359, 361.) Contrary to defendant's contention, he was not deprived of his right to confront witnesses against him. The statute in effect during defendant's trial (Ill. Rev. Stat. 1983, ch. 38, par. 115—5.1) explicitly provides, in its third and final paragraph, that persons who prepare reports or records offered in evidence may be subpoenaed as witnesses upon the request of either party. (See *Heitz v. Hogan* (1985), 134 Ill. App. 3d 352, 361, 480 N.E.2d 185, 191.) Our review of the record fails to disclose that the defendant made any efforts to subpoena the preparer of the document. Therefore, we find that he cannot now maintain that he was deprived of his opportunity of confrontation.

■ Defendant's additional contention that there may have been an intervening cause of death is also unsupported by anything in the record. The evidence with respect to the cause of death was established beyond a reasonable doubt. The facts contained in the certified death certificate were corroborated by the testimony of the accomplices as well as the Alton police officers who arrived at the scene. Where the

State has shown the existence, through an act of the defendant, of a sufficient cause of death, death is presumed to have resulted from that act unless it appears to have been caused by a supervening act. A supervening act will not relieve the defendant from responsibility unless it was disconnected from defendant's act. (*People v. Brown* (1973), 9 Ill. App. 3d 730, 735, 293 N.E.2d 1, 4.) The existence of a time interval between the defendant's act and the victim's death does not preclude a causal link, and this is true even where, unlike the case at bar, there has been an apparent recovery from the injuries inflicted during the interval. (*People v. Brown* (1978), 57 Ill. App. 3d 528, 531-32, 373 N.E.2d 459, 462.) In the instant case, the evidence established that the victim's death resulted from the defendant's act. The fact that the defendant remained alive for 5½ days, without more, is insufficient to constitute a supervening, disconnected act sufficient to relieve defendant from responsibility for having stabbed the victim to death. Accordingly, we find that the State established the *corpus delicti* beyond a reasonable doubt.

■ Defendant's second contention on appeal is that he was denied a fair trial because he was chained in front of the jury throughout the duration of the trial. Defendant, who represented himself, contends that the trial court abused its discretion by requiring him to wear leg shackles. Prior to trial, defendant moved to have his handcuffs and leg irons removed. In response, the assistant State's Attorney agreed that the handcuffs were unnecessary but urged that the leg irons remain, in light of the fact that defendant was being held subject to a sentence of 50 years of hard labor and two consecutive 10-year sentences in the State of Louisiana. The assistant State's Attorney indicated that he had documents indicating that the defendant was a security risk and that he had escaped from a Louisiana county jail. The State also indicated it possessed a certified transcript indicating an assault upon a court officer in Louisiana. Finally, the assistant State's Attorney pointed out that when defendant was seated, the jury would be unable to see the leg shackles. In light of the defendant's prior record and the security problems of the courtroom, the trial court ruled that the shackles on defendant's legs would be necessary.

The decision to shackle a defendant rests within the sound discretion of the trial court, and, while it is an extreme measure, it is sometimes necessary for the safe, orderly, and reasonable progress of the trial, as where there is reason to believe that the defendant may try to escape or may pose a threat to the safety of the people in the courtroom. (*United States v. Theriault* (5th Cir. 1976), 531 F.2d 281, 284-85; *Kennedy v. Cardwell* (6th Cir. 1973), 487 F.2d 101, 105.) It is up to the

trial judge to select the physical restraint most suitable in light of all the circumstances. (*People v. Boose* (1977), 66 Ill. 2d 261, 266, 362 N.E.2d 303, 305.) Factors to be assessed by the court include the seriousness of the present charge, the defendant's temperament, character, physical attributes, past record, past escapes or escape attempts, threats of harm to others, the nature and physical security of the courtroom, and adequacy and availability of alternate remedies. 66 Ill. 2d 261, 266-67, 362 N.E.2d 303, 305-06.

■■ In reviewing the instant proceedings in the trial court, we find that the trial court's decision was supported by the record. The defendant had an extensive prior record of numerous crimes of violence. The assistant State's Attorney stated that he was in possession of certified transcripts showing that the defendant had assaulted an officer of the Louisiana court. The defendant himself confirmed that by alluding to the incident, stating that he was instead attacked by the officers. Additionally, the defendant was presently serving a 50-year sentence and two consecutive 10-year sentences in Louisiana, and the jail in Louisiana had supplied documents indicating the defendant to be a security risk in that he had escaped from jail. The defendant did not object to these allegations. Contrary to defendant's assertion, the court's findings demonstrate that it was not relying solely upon the defendant's prior record. The trial court's comments show that it balanced defendant's right to a fair trial against the legitimate security interests of the courtroom personnel and the State of Louisiana. The trial court was in the best position to assess the security and physical set-up of the courtroom and building as well as the prior security problems that existed in the courtroom. Also, despite the fact that the jury was unable to see defendant's leg shackles when he was seated at counsel table, we note that it was defendant who chose to bring the leg shackles to the jury's attention by walking around in front of the jury. Moreover, the defendant himself conducted the *voir dire* examination of potential jurors for the defense. The defendant questioned the jurors specifically as to whether the fact that he was in leg irons would prejudice them. Also, at various times both the court and the assistant State's Attorney asked the potential jurors whether they would be prejudiced against the defendant because of the presence of the leg irons. Both the defendant and the court were apparently satisfied with the jurors' statements that they would not be prejudiced against the defendant. Also we note that the defendant did not exercise all of his peremptory challenges and that the jury was properly instructed as to the presumption of innocence.

■■ Finally, we note that even if defendant had not been wearing

the leg irons, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict. It is the duty of a reviewing court to consider the trial record as a whole and ignore errors that are harmless, even errors of a constitutional nature. (*United States v. Hastings* (1983), 461 U.S. 499, 509, 76 L. Ed. 2d 96, 106, 103 S. Ct. 1974, 1980.) The evidence against the defendant in this case was overwhelming. Calvin Harris, an accomplice, actually saw the defendant stab the victim. James Harris, another accomplice, who was also in the store, was told by the defendant that he cut the victims' throats. Zonnie Collum, who drove the getaway car, saw blood all over the defendant's hands and jacket, asked the defendant why he stabbed the victim, and was told "*** that's the way you get the job done, man, you don't leave no witnesses behind." This evidence, together with the testimony of the officers who arrived at the scene and observed the victim in a pool of blood, and the coroner's certificate of death, all established, beyond any doubt, the defendant's guilt. We find the trial court was within its discretion in requiring the defendant to wear leg irons due to the security risk posed. We also conclude that the defendant was not prejudiced.

■ Defendant's third and final contention on appeal is that the prior consistent statements of two accomplice-witnesses, James and Calvin Harris, were improperly admitted into evidence. We find that defendant has waived this issue. During the trial, the defendant failed to object to the testimony of Calvin Harris concerning his prior consistent statement. Furthermore, defendant failed to raise this issue in either of his two written motions for a new trial. The issue has therefore been waived. *People v. Huckstead* (1982), 91 Ill. 2d 536, 543, 440 N.E.2d 1248, 1251; *People v. Cartalino* (1982), 111 Ill. App. 3d 578, 588, 444 N.E.2d 662, 671.

Assuming, however, that defendant had not waived this issue, we find that the evidence was properly admissible to rebut the charge of recent fabrication implicit in the defense theory of the case and, secondly, that even if improperly admitted, any error was harmless in light of other overwhelming evidence against the defendant.

■■ A witness is generally precluded from testifying to a prior out-of-court statement which corroborates his trial testimony. However to rebut a charge or inference that the witness is motivated to testify falsely, or that his testimony is of recent fabrication, evidence is admissible that he told the same story before the motive came into existence and before the time of the alleged fabrication. (*People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363, 371.) In the instant case, after James Harris testified on direct examination, the defendant cross-ex-

amined him regarding his plea agreement with the State. In its cross-examination, the defense raised the clear inference that the witness would lie in order to shorten his prison term. It was only at this point on redirect examination that the State introduced evidence of the witness' consistent statement prior to the initiation of any plea bargaining and before there were any "deals." The entire thrust of the defense theory of the case was that the accomplices, Zonnie Collum and James and Calvin Harris, were all motivated to testify falsely and implicate the defendant in return for which either they would not be prosecuted at all or they would be charged with armed robbery only and would receive shorter sentences. This is apparent from the defense cross-examination of the three accomplices, the introduction into evidence, by the defense, of memos of the plea negotiations dated November 15, 1979, and the defense closing argument. It was therefore proper for the State to be allowed to show that in April 1979, immediately upon their arrest and before plea negotiations had even been initiated, two witnesses gave statements consistent with their trial testimony. According to the defendant, the Harris brothers' motive to falsely implicate him arose at the outset and existed at the time of their statements to the police. This same contention was raised and rejected in *People v. Klinkhammer* (1982), 105 Ill. App. 3d 747, 434 N.E.2d 835. In that case, the court held that even though the defendant, on the night of his arrest and statement to the police, inquired about the possibility of a deal and was told by the assistant State's Attorney that no deal could be made at the time but that cooperation would be noted, the motive to fabricate was nonexistent since the effect of the fabrication could not have been foreseen. (105 Ill. App. 3d 747, 749, 434 N.E.2d 835, 836.) In the case at bar, there is no indication that the possibility of a potential "deal" was even discussed when the Harrises were arrested. It was only when the Harris brothers were offered leniency and plea negotiation agreements were finalized in November 1979 that the motive to testify falsely arose. Finally, assuming that it was error to admit the testimony concerning the statements, we find that any error was harmless in light of the other overwhelming evidence against the defendant. See *People v. Rosario* (1979), 74 Ill. App. 3d 607, 613, 393 N.E.2d 543, 548.

For the reasons stated above, we affirm defendant's convictions and sentence.

Affirmed.

KARNS, P.J., and WELCH, J., concur.