# IN THE COURT OF APPEALS OF IOWA

No. 13-1528
Filed January 14, 2015

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JOSHUA KENYADA WEATHERSPOON,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Story County, Michael J. Moon, Judge.

Joshua Weatherspoon appeals the judgment and sentence entered following his convictions of second-degree robbery, first-degree theft, and two counts each of forgery and unauthorized use of a credit card. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Stephen Holmes, County Attorney, and Timothy Meals and Thomas Kunstle, Assistant County Attorneys, for appellee.

Considered by Mullins, P.J., McDonald, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MULLINS, P.J.**

Joshua Weatherspoon appeals the judgment and sentence entered following his convictions of second-degree robbery, first-degree theft, and two counts each of forgery and unauthorized use of a credit card. He contends his trial counsel was ineffective and his sentence is illegal. We affirm.

**I. BACKGROUND FACTS AND PROCEEDINGS.**

In the early morning hours of February 15, 2013, Mitchell Metcalf was walking through the parking lot of his apartment complex in Ames when he heard someone shout, "I'm gonna rob this guy!" Metcalf looked up and saw three men in front of him before looking back down to avoid eye contact. One of the men then attacked Metcalf. The man knocked Metcalf to the ground with a blow and punched Metcalf three more times while yelling, "Gimme your money!" Metcalf recalled also being kicked at least once. He suffered a black eye, a scrape beneath his cheek, and a "skinned up" elbow and hand in the attack.

Metcalf did not have any money, so he gave the man his credit card. At that point, the attack stopped, and the man walked away. Metcalf continued to his apartment and called the Ames Police Department to report what happened. Although he did not have an opportunity to observe his attacker's facial features, Metcalf was able to give the police a description of the man. He noted that at the time of the attack, the man was wearing a red hooded sweatshirt (also referred to as a hoodie) with some white detail on it. By the man's speech, Metcalf had the impression he was from out of town.

Law enforcement officers located a number of potential suspects in the area who matched the description Metcalf had given. Metcalf was unable to identify any of the men as his attacker.

On February 16, 2013, Metcalf reported unauthorized charges had been made to his credit card. His bank statement showed two transactions had been made within an hour after the credit card was taken. One charge was for $379.76 at Wal-Mart, and the other was for $12.83 at Swift Shop. Law enforcement obtained security video from both stores.

The Wal-Mart security video showed a black vehicle with a spoiler entering the parking lot at approximately 2:26 a.m. Three men exited the vehicle and entered the store, including a man wearing a red hoodie. The video shows the man in the hoodie purchasing a PlayStation 3 game console and an extra controller.

The Swift Shop security video showed the man in the hoodie purchasing two packs of Newport cigarettes. The man provided identification to show his age, and the cashier entered the date of birth listed on the identification into the register in order to complete the sale.

During the investigation, law enforcement officers obtained the serial number for the PlayStation 3 purchased with the stolen credit card and subpoenaed the manufacturer's online subscriber records, which list the IP address associated with that PlayStation. That IP address was eventually traced to the Ames apartment Weatherspoon shared with his girlfriend, Margaret Kovarik. The police obtained a search warrant for the residence and recovered a

PlayStation 3 with a serial number matching that of the PlayStation 3 purchased with Mitchell's credit card, as well as two game controllers. They also seized a red hoodie and a pair of shoes similar to the ones the suspect was seen wearing on the Wal-Mart security video. Law enforcement also learned the vehicle that was seen transporting the suspect on the Wal-Mart security video belonged to Kovarik. Additionally, the birthdate entered by the clerk at the Swift Shop matched Weatherspoon's.

During his interview with police, Weatherspoon denied beating up Metcalf or using his credit card. He claimed the PlayStation 3 came from a friend before stating his stepbrother, Devon Taylor, had given it to him. Weatherspoon admitted the red hoodie belonged to him but claimed Taylor borrows his clothes. He denied being a cigarette smoker.

After viewing the Wal-mart security video, Kovarik identified Weatherspoon as the male in the red hoodie and confirmed the vehicle seen on the video was hers. She stated she recognized Weatherspoon's mannerisms, the way he stood, and the way he walked. Kovarik also corroborated Weatherspoon's claim that he does not smoke cigarettes.

A couple weeks after he was robbed, Metcalf was shown a photo array that included a photo of Weatherspoon. Metcalf identified someone other than Weatherspoon as being his attacker, though he was not confident about his choice. Metcalf was unable to identify Weatherspoon as his attacker at trial, although he testified Weatherspoon matched his attacker's height, weight, and profile.

On June 23, 2013, Weatherspoon was charged with one count of first-degree robbery, one count of first-degree theft, two counts of forgery, and two counts of unauthorized use of a credit card. Trial was held in August 2013. The trial court granted Weatherspoon's motion for judgment of acquittal on the robbery charge, reducing it from first degree to second degree. At the close of the August 2013 trial, the jury found Weatherspoon guilty of all counts. He was sentenced to an indeterminate term of no more than ten years in prison for both the robbery and theft counts, five years in prison on each of the forgery counts, and two years in prison on each of the unauthorized-use-of-a-credit-card counts. The terms were ordered to run concurrently.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL.

Weatherspoon contends his trial counsel was ineffective in three respects. He claims counsel was ineffective in failing to: (1) object to bad-acts evidence, (2) object to the forgery instruction, and (3) request an instruction on unauthorized use of a credit card as a lesser included offense of forgery.

We review ineffective-assistance-of-counsel claims de novo. *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013). In order to succeed, a defendant must prove counsel failed to perform an essential duty and prejudice resulted. *Rhoades v. State*, 848 N.W.2d 22, 28 (Iowa 2014). Both elements must be proved by a preponderance of the evidence. *State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013).

In determining whether trial counsel failed to perform an essential duty, "we require more than a showing that trial strategy backfired or that another

attorney would have prepared and tried the case somewhat differently.  Petitioner must overcome a presumption that counsel is competent."  *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1985) (citations omitted).  In order to prove prejudice, a defendant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  A reasonably probability is a probability sufficient to undermine confidence in the outcome.  *Id.*

### A. Failure to object to evidence.

At trial, the State introduced evidence concerning another complaint originating at Metcalf's apartment building.  Officer Vincent Junior testified three men, one wearing a red hoodie, allegedly accosted two women inside the building on the same day the robbery took place.  Detective Elijah Hansen testified that a photographic array containing Weatherspoon's photo was shown to both of the women and neither identified Weatherspoon as the perpetrator. While Weatherspoon's trial counsel was cross-examining Detective Hansen, she referred to both the person who attacked Metcalf and the person who accosted the women as "the robber."

Weatherspoon argues his trial counsel was ineffective by failing to object to the evidence concerning the incident with the two women.  Such evidence "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith."  Iowa R. Evid. 5.404(b).

At trial, defense counsel presented a defense of mistaken identity to the jury, and the testimony regarding the other incident at the building strengthened

that defense. The argument was that the man in the red hoodie who robbed Metcalf was the same person who assaulted the two women, and that since none of the three alleged victims could identify Weatherspoon, he could not have been Metcalf's attacker—it must have been someone else. Although Metcalf failed to identify Weatherspoon, he was defending himself during the robbery and was unable to get a good look at his attacker. The fact that both women involved in the second incident claimed to have had a close-up look at a man wearing a red hoodie, but later failed to identify Weatherspoon in a photo array, strengthened the defense argument of mistaken identity—i.e., that the man in the red hoodie who robbed Metcalf was not Weatherspoon. "Improvident trial strategy, miscalculated tactics, mistake, carelessness or inexperience do not necessarily amount to ineffective counsel." *State v. Aldape*, 307 N.W.2d 32, 42 (Iowa 1981). Because counsel's failure to object was part of a valid trial strategy, we find counsel was not ineffective.

**B. Failure to object to jury instruction.**

Weatherspoon next argues counsel was ineffective by failing to object the forgery instruction given to the jury. That instruction stated that in order to find Weatherspoon guilty of the forgery charges, the State had to prove the following:

> 1. On or about the 15th day of February, 2013, the defendant completed a credit card receipt at [Swift Shop and Wal-mart] in Ames, Iowa.
> 2. Without Mitchell Metcalf's authority, the defendant completed the credit card authorization receipt to appear to be the act of Mitchell Metcalf.
> 3. The defendant knew the act would facilitate a fraud or injury.

Weatherspoon asserts that because he was charged with forgery as a class "D" felony under Iowa Code section 715A.2(2)(a)(3) (2013), the trial court erred in failing to instruct the jury that the writing "ostensibly evidences an obligation of the person who has purportedly executed it or authorized its execution." The question before us is "whether a reasonably competent attorney would have failed to object to the erroneous jury instruction under the given circumstances." *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006).

The State argues the instruction given is adequate to convey that the writing ostensibly evidences Metcalf's obligation because it states the jury must find Weatherspoon completed the "credit card authorization receipt." *See People v. Searcy*, 18 Cal. Rptr. 779, 781 (Cal. Dist. Ct. App. 1962) ("Signing a credit sales slip constitutes an implied promise to pay for the merchandise described on the slip."); *People v. Reynolds*, 85 Ill. App. 3d 833, 836 (Ill. App. Ct. 1980) (holding a credit card sales slip obligates the credit card company as issuer of the card to reimburse the vendor for items listed on the slip and, in turn, obligates the card user to reimburse the credit card company). Because a marshalling instruction must include all essential elements of the crime, *see State v. Billings*, 242 N.W.2d 736, 738 (Iowa 1976), we are unable to say counsel did not breach an essential duty by failing to object. However, Weatherspoon cannot show he was prejudiced by any error; there is no dispute in the evidence regarding whether Metcalf's forged signature obligated him to pay for the purchases made because Metcalf's account was charged for the purchases made with his credit card.

Because Weatherspoon has not shown any breach of duty resulted in prejudice, his claim fails.

### C. Failure to request instruction on lesser included offense.

Weatherspoon's last claim is that counsel was ineffective by failing to request the jury be instructed on unauthorized use of a credit card as a lesser included offense of forgery.  He argues that under the State's theory of prosecution for both crimes, it is impossible to commit the offense of forgery without also committing the offense of unauthorized use of a credit card.

When determining whether one crime is a lesser included offense of another, the test is whether the greater offense cannot be committed without also committing all elements of the lesser offense.  *State v. Miller*, 841 N.W.2d 583, 587-88 (Iowa 2014); *State v. Coffin*, 504 N.W.2d 893, 894 (Iowa 1993).  Under this test, we look at the elements of the marshalling instruction actually submitted to the jury.  *Miller*, 841 N.W.2d at 590.

The jury was instructed that Weatherspoon committed forgery if the State proved Weatherspoon completed a credit card authorization receipt to appear to be the act of Metcalf without Metcalf's authority and with knowledge the act would facilitate a fraud or injury.  The jury was further instructed that Weatherspoon committed unauthorized use of a credit card if the State proved Weatherspoon used a credit card for the purpose of obtaining goods with knowledge the credit card was stolen, and the goods secured by the credit card were less than $1000.

While there is no question it is possible to commit a forgery under Iowa Code section 715A.2 without also committing the offense of unauthorized use of a credit card under section 715A.6, we must determine whether it was possible under the marshalling instructions provided to the jury here. The marshalling instructions share two elements: completing a credit card authorization receipt is equivalent to using a credit card to obtain goods, and using the credit card without Metcalf's authority is the equivalent of knowing the credit card was stolen. However, as the State argues, the intent element of each crime is different. The forgery instruction requires a showing that the act would facilitate a fraud or injury, which is much broader than a showing of intent to obtain goods as is required under the unauthorized-use-of-a-credit-card instruction. Because it is possible to find Weatherspoon committed fraud without finding he intended to obtain goods, the latter charge is not a lesser included offense of the former. Accordingly, counsel had no duty to request the jury be instructed as such, and Weatherspoon's ineffective-assistance claim fails.

## III. ILLEGAL SENTENCE.

Weatherspoon also contends the district court erred in failing to merge his convictions of unauthorized use of a credit card and forgery. His argument is based on the premise that unauthorized use of a credit card is a lesser included offense of forgery. Because we have already determined it is not, Weatherspoon's sentence was not illegal, and we affirm.

**AFFIRMED.**